**quinn emanuel** trial lawyers | new york, ny

51 Madison Avenue, 22nd Floor | New York, NY 10010 | TEL (212) 849-7228 FAX (212) 849-7100

WRITER'S DIRECT DIAL NO.
**(212) 849-7228**
WRITER'S EMAIL ADDRESS
**lukenikas@quinnemanuel.com**

October 6, 2022

**VIA ECF**
Hon. Edgardo Ramos
Thurgood Marshall U.S. Courthouse
40 Foley Square
New York, NY 10007

*Re:*   *McCollum v. Baldwin*, No. 1:22-cv-07328

Dear Judge Ramos:

      I write on behalf of Alexander Baldwin III to request a pre-motion conference under Your Honor's Individual Practices 2.A.ii. regarding our intention to file a Rule 12(b)(6) motion.

## BACKGROUND

      Baldwin allegedly uses his social media accounts to "regularly post[] videos and pictures featuring his political opinions," as well as to identify and "support various causes[.]"  (Compl. ¶ 14.)  Baldwin became aware of Plaintiffs and their cause through social media.  (*Id.* ¶ 20, Ex. A at 4.)  He wished to pay tribute to a fallen Marine, LCPL Rylee J. McCollum, and provide support for his widow, Jiennah McCollum, and their child.  (*Id.* ¶ 20, Ex. A at 4.)  Baldwin approached Roice McCollum, who is LCPL McCollum and Cheyenne McCollum's sister, through her Instagram account to coordinate a $5,000 donation.  (*Id.* ¶ 20, Ex. A at 4.)

      In early January 2022, after Baldwin made the donation, Roice posted a photograph to her public Instagram account, captioned "Throwback," followed by lighthearted and patriotic emojis. (*Id.* ¶¶ 18, 19, Ex. A at 2.)  It was a picture of her at the January 6, 2021 insurrection at the U.S. Capitol, and she was publicly celebrating "in anticipation of the January 6, 2022, one-year anniversary of her attendance" at this event (*id.* ¶ 18), which both liberals and conservatives have referred to as a "riot" or "insurrection."  Baldwin saw the post and contacted Roice to confirm that he recalled her identity correctly.  (*Id.* ¶ 20, Ex. A at 2.)  Roice replied that she was Jiennah's sister-in-law.  (*Id.* ¶ 21.)  Baldwin then exchanged private Instagram messages with Roice, in which he accused her of being a "January 6th rioter."  (*Id.* ¶¶ 21-22, Ex. A at 3.)  Roice confirmed her participation at January 6 and told Baldwin that her participation constituted free speech.  (*Id.* ¶ 22, Ex. A at 3.)  Baldwin stated that while Roice's "brother fought for this country bravely and honestly," the January 6 riot "resulted in the unlawful destruction of government property, the death of a law enforcement officer, [and] an assault on the certification of the presidential election."  (*Id.*, Ex. A at 3.)  Consistent with his use of social media to address political matters (*id.* ¶¶ 12, 14), Baldwin expressed his opinion by reposting Roice's publicly posted photograph on his Instagram feed.  (*Id.* ¶ 27, Ex. A at 4.)  He added a caption that accurately stated the circumstances of his acquaintance with Roice and did not reference any Plaintiffs by name.  (*Id.* ¶ 27, Ex. A at 4; *see id.* ¶ 20.)  Plaintiffs allege that they received hateful messages from third parties

who saw Baldwin's repost. (*Id.* ¶¶ 30, 32, 36-37, 40.) Baldwin denounced those messages and reiterated that his opinion about Roice's conduct did not affect his support for her family. (*See id.* ¶ 33, Ex. A at 5-6, 8-9.) In a later post, responding to a comment, Baldwin called "the woman [he] approached" on Instagram (*i.e.*, Roice) an "insurrectionist." Plaintiffs sued Baldwin for defamation and other torts that seek to punish Baldwin for expressing his political opinion.

## ARGUMENT

**A.** ***Plaintiffs Fail to State Defamation Claims.*** To state a claim of defamation, a plaintiff must allege "a defamatory statement of fact" that is "false," "published to a third party," that "concern[s] the plaintiff," and "either caus[es] special harm or constitute[s] [defamation] *per se*." *Travelex Currency Servs. v. Puente Enters.*, 2019 U.S. Dist. LEXIS 45001, at *21 (S.D.N.Y. Mar. 19, 2019). Plaintiffs fail to do so.

Plaintiffs fail to plead ordinary defamation. Baldwin's alleged statements about Jiennah and Cheyenne are "nowhere to be found" in the Instagram posts they reference, which requires dismissal of their claims. *Hogan v. Lewis Cty.*, 2020 U.S. Dist. LEXIS 95244, at *45 n.15 (N.D.N.Y. June 1, 2020). Plaintiffs' own allegations demonstrate that Roice is "the woman [Baldwin] approached" to facilitate his donation, and Baldwin's statements unequivocally relate only to Roice. (Compl. ¶¶ 20-22, 27.) The complaint also refers to Baldwin's *private* messages with Roice. (Compl. ¶¶ 20-22, 26, 28, Ex. A at 3.) But private messages are not actionable because "a libel action cannot be maintained unless it is premised on published assertions." *Sandals Resorts Intl. Ltd. v Google, Inc.*, 86 A.D.3d 32, 38 (1st Dep't 2011). Further, "courts will dismiss defamation claims for failure to allege special damages with the requisite degree of specificity," and Plaintiffs here do not and cannot plead any "specific and measurable" loss. *Krzesaj v. Henry*, 2017 U.S. Dist. LEXIS 37543, at *39-40 (S.D.N.Y. Mar. 15, 2017) (Ramos, J.).

Because Plaintiffs have not pled special damages, they attempt to assert claims for defamation *per se*. Defamation *per se* "charg[es] an individual with a serious crime"; "tends to injure another in his trade, business, or profession; or imputes "a loathsome disease" or "unchastity." *Travelex*, 2019 U.S. Dist. LEXIS 45001, at *22. But Baldwin's use of the word "insurrectionist" does not "impute" an "indictable offense." *Privitera v. Phelps*, 79 A.D.2d 1, 3 (4th Dep't. 1981). Baldwin merely restated what Roice *herself* made public (her admitted participation at January 6) in language that reflected his opinion and has been used by numerous publications to describe the event.[1]

---

[1] Merriam-Webster defines "insurrection" as "an act or instance of revolting against civil authority or an established government." *Insurrection*, Merriam-Webster, https://www.merriam-webster.com/dictionary/insurrection. And "revolt" is defined as "to renounce allegiance or subjection" or "to experience disgust or shock." *Id.* at https://www.merriam-webster.com/dictionary/revolt. Notably, Merriam-Webster gives eight "recent examples" of usage of "insurrection"—*seven* of which refer to January 6. The plain English meaning of "insurrectionist" does not impute an "indictable offense." Rather, the plain meaning accurately captures the widely-held opinion that Baldwin sought to convey: the people who supported January 6 were renouncing a democratically-held election and, therefore, were revolting against civil authority, which is the precise definition of "insurrection" and does not impute a crime. Although Plaintiffs argue that the U.S. Code references "insurrection," Baldwin is not a lawyer or an expert in the penal laws. Even Merriam-Webster distinguishes between a technical "legal definition" of insurrection and the word's plain meaning. The Court must apply the plain English meaning, in the context it was used (a generalized statement to a general public audience on social media), when applying the governing law. *E.g., Konig v. WordPress.com*, 112 A.D.3d 936, 937 (2d Dep't 2013).

Plaintiffs fail to plead defamation by implication. The law provides "absolute protection of opinions," *Celle v. Filipino Reporter Enters.*, 209 F.3d 163, 178 (2d Cir. 2000), especially those regarding issues of "common interest" to the electorate, such as political protests, *Travelex*, 2019 U.S. Dist. LEXIS 45001, at *26. Yet Plaintiffs allege that Baldwin "*believes* that every person present" on January 6 is an "unrepentant rioter." (Compl. ¶ 110 (emphasis added).) Baldwin's beliefs and opinions—read "in context to test their effect on the average reader"—are not defamatory. *Restis v. Am. Coal. Against Nuclear Iran, Inc.*, 53 F. Supp. 3d 705, 720 (S.D.N.Y. 2014) (Ramos, J.). "[A] reasonable reader" on social media would never have thought Baldwin's "generalized refence" to the insurrection was a "factual accusation of criminal conduct." *Konig*, 112 A.D.3d at 937. Regardless, the implication of Baldwin's statement—that Roice was present on January 6—"must be false in order to be defamatory." *Henry v. Fox News Network LLC*, 2022 U.S. Dist. LEXIS 169928, at *21-22 (S.D.N.Y. Sep. 20, 2022). But that statement is *true*, and it is "axiomatic that truth is an absolute, unqualified defense to a civil defamation action." *Enigma Software Grp. USA, LLC v. Bleeping Comput. LLC*, 194 F. Supp. 3d 263, 281 (S.D.N.Y. 2016).

**B.** *Failure to State Any Negligence Claims.* "Under New York law," any tort sounding in negligence requires "a breach of duty," proximate cause "between the conduct and the injury," and, in the case of negligent infliction of emotional distress, "severe emotional distress." *Francis v. Kings Park Manor, Inc.*, 2015 U.S. Dist. LEXIS 31787, at *13 (E.D.N.Y. Mar. 16, 2015). Plaintiffs do not allege that any common law or statute imposed a duty on Baldwin. The allegation that third parties reacted to Baldwin's statements in an offensive manner does not create a duty because "there is no duty to protect from emotional injury a bystander to whom there is otherwise owed no duty." *Kennedy v. McKesson Co.*, 58 N.Y.2d 500, 506 (1983). Ruling otherwise would allow Plaintiffs to circumvent the First Amendment by transforming a meritless defamation claim into other torts. *See*, *Snyder v. Phelps*, 562 U.S. 443, 451 (2011) (First Amendment "serve[s] as a defense in state tort suits"). Though Plaintiffs allege Baldwin "invited 2.4 million people to attack, threaten, and shame the McCollum family" (Compl. ¶¶ 65, 70, 94, 99, 127, 132), this claim belies the actual words Baldwin used, which control the Court's analysis. Specifically, he *never* asked any person to take action; on the contrary, he told commenters to *stop* making offensive comments. (*Id.* ¶ 27.) Nor have Plaintiffs adequately alleged severe emotional distress.

**C.** *Plaintiffs Failure to State a Claim for Intentional Infliction.* Plaintiffs' "claim for intentional infliction of emotional distress fails where it falls within the ambit of another tort." *Restis*, 53 F. Supp. 3d at 729 (citing *Fordham v. Islip Union Free Sch. Dist.*, 662 F. Supp. 2d 261, 276 (E.D.N.Y. 2009)) (Ramos, J.). Courts routinely dismiss IIED claims when plaintiffs plead no facts beyond "what are essentially defamation claims." *Anyanwu v. Columbia Broad. Sys., Inc.*, 887 F. Supp. 690, 693 (S.D.N.Y. 1995). That is so here. This claim also fails because Baldwin's actions "can be seen, at least in part, as having been motivated by the desire to express some opinion." *McKenzie v. Dow Jones & Co., Inc.*, 355 F. App'x 533, 536 (2d Cir. 2009). Nor do Plaintiffs' allegations come close to clearing the "deliberately high" hurdle of "extreme and outrageous conduct," which has been set "to ensure that a plaintiff's claim of emotional distress is genuine and to dissuade litigation where only bad manners and hurt feelings are involved." *Restis*, 53 F. Supp. 3d at 729-30 (S.D.N.Y. 2014).

* * * *

Baldwin cannot be held liable for the statements at issue in this case. A contrary ruling would violate the U.S. and N.Y. Constitutions, violate U.S. Supreme Court and Second Circuit precedents, and violate the common law. Simply put, the parties have a political disagreement about January 6, but that debate belongs in the public square, not this Court.

Respectfully submitted,

*/s/ Luke Nikas*

Luke Nikas