UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JIENNAH MCCOLLUM, ROICE JOLEEN MCCOLLUM, AND CHEYENNE MCCOLLUM, <br><br>        PLAINTIFFS, <br><br> V. <br><br> ALEC BALDWIN, <br><br>        DEFENDANT. | CASE NO. 1:22-cv-7328 |

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT ALEXANDER R. BALDWIN III'S <u>MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT</u>

Dated:  November 30, 2022

QUINN EMANUEL URQUHART & SULLIVAN, LLP

Luke Nikas
51 Madison Avenue, 22nd Floor
New York, NY 10010
(212) 849-7000
lukenikas@quinnemanuel.com

*Attorneys for Defendant Alexander R. Baldwin III*

## Table of Contents

*Page*

Preliminary Statement.................................................................................................1

BACKGROUND ..........................................................................................................3

I.      Baldwin Uses Social Media to Post Opinions ....................................................3

II.     Baldwin Contacts Roice Online to Facilitate his Donation to a Fundraiser ........3

III.    Roice Posts on Instagram a Picture of the January 6, 2021 Event at the Capitol to Celebrate her Participation and the One-Year Anniversary ....................................4

IV.     Baldwin Expresses his Political Opinion............................................................5

V.      Members of the Public Express Their Opinions, Disagreeing with Roice's Participation in the Events of January 6 ..............................................................6

VI.     Roice Sues Baldwin For Millions and Goes on Fox News..................................7

LEGAL STANDARD ....................................................................................................7

I.      Plaintiffs Fail to State Any Claims for Defamation, Defamation Per Se, and Defamation by Implication .................................................................................9

        A.      Roice's private communications with Baldwin are not actionable.........................9

        B.      Plaintiffs do not state a claim for defamation per se because Baldwin did not impute to Plaintiffs a criminal offense.............................................................9

        C.      Plaintiffs do not plead special damages ...............................................13

        D.      Plaintiffs' defamation claims fail for several other independent reasons .............15

II.     Plaintiffs Fail to State Claims for Negligence, Gross Negligence, and Negligent Infliction of Emotional Distress.........................................................................20

III.    Plaintiffs Fail to State Claims for Intentional Infliction of Emotional Distress ...............22

CONCLUSION ...........................................................................................................23

<u>T<small>ABLE OF</small> A<small>UTHORITIES</small></u>

*Cases*                                                                       *Page(s)*

*Adelson v. Harris*,
  973 F. Supp. 2d 467 (S.D.N.Y. Sept. 30, 2013) ....................................................... 8

*Anyanwu v. Columbia Broad. Sys., Inc.*,
  887 F. Supp. 690 (S.D.N.Y. June 15, 1995) .......................................................... 21

*Anonymous*
  60 N.Y. 262 (1875) ............................................................................................... 10

*Ashcroft v. Iqbal*,
  556 U.S. 662, 678 (2009) ................................................................................ 7, 17

*Barbash v. STX Fin., Ltd. Liab. Co.*,
  2020 WL 6586155 (S.D.N.Y. Nov. 10, 2020) ...................................................... 16

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544, 555 (2007) ....................................................................................... 7

*Biro v. Condé Nast*,
  807 F.3d 541 (2d Cir. 2015) .......................................................................... 16, 17

*Biro v. Condé Nast*,
  883 F. Supp. 2d 441 (S.D.N.Y. Aug. 9, 2012) ...................................... 8, 10, 11, 13

*Blair v. Inside Ed. Prods.*,
  7 F. Supp. 3d 348 (S.D.N.Y. Mar. 14, 2014) ...................................................... 15

*Brian v. Richardson*,
  87 N.Y.2d 46 (1995) ....................................................................................... 11, 18

*Brooker v. Coffin*,
  5 Johns 188 (1809) .............................................................................................. 10

*Chinese Americans C.R. Coal., Inc. v. Trump*,
  No. 21-CV-4548(JGK), 2022 WL 1443387 (S.D.N.Y. May 6, 2022) ................... 20

*Church of Scientology Int'l v. Behar*,
  238 F.3d 168 (2d Cir. 2001) ............................................................................... 17

*Cohen v. Rosicki, Rosicki & Assocs., P.C.*,
  897 F.3d 75 (2d Cir. 2018) .................................................................................... 7

*Cooney v. Osgood Mach., Inc.*,
  81 N.Y.2d 66 (1993) .............................................................................................. 8

*Daniel Goldreyer, Ltd. v. Van de Wetering*,
   217 A.D.2d 434 (App. Div. 1st Dept. 1995)................................................................... 15

*Davis v. Costa-Gavras*,
   580 F. Supp. 1082 (S.D.N.Y. Feb. 7, 1984) ................................................................... 8

*Diaz v. Little Remedies Co., Inc.*,
   81 A.D.3d 1419 (App. Div. 4th Dept. 2011) ................................................................ 20

*Finkelstein v. Wachtel*,
   2003 WL 1918309 (S.D.N.Y. Apr. 21, 2003) ........................................................... 10

*Flamm v. American Assoc. of Univ. Women*,
   201 F.3d 144 (2d Cir. 2000) ....................................................................................... 15

*Fordham v. Islip Union Free Sch. Dist.*,
   662 F. Supp. 2d 261 (E.D.N.Y. Sept. 11, 2009) ....................................................... 21

*Francis v. Kings Park Manor, Inc.*,
   14–CV–3555, 2015 WL 1189579 (E.D.N.Y. Mar. 16, 2015) .................................... 19

*Ganske v. Mensch*,
   2020 WL 4890423 (S.D.N.Y. Aug. 20, 2020) ........................................................... 9

*Green v. Hinds*,
   No. 17CV5422DRHARL, 2019 WL 624929 (E.D.N.Y. Feb. 14, 2019)...................... 21

*Gurtler v. Union Parts Mfg. Co.*,
   285 A.D. 643 (App. Div. 1st Dept. 1955)................................................................... 10

*Hengjun Chao v. Mount Sinai Hosp.*,
   476 F. App'x 892 (2d Cir. 2012)................................................................................. 21

*Henry v. Fox News Network LLC*,
   2022 WL 4356730 (S.D.N.Y. Sept. 20, 2022)........................................................... 18

*Immuno AG v. Moor-Jankowski*,
   567 N.E.2d 1270 (1991) ...................................................................................... 15, 18

*J Savitt, Inc. v. Savitt*,
   No. 08 Civ. 8535(DLC), 2009 WL 691278 (S.D.N.Y. Mar. 17, 2009)...................... 21

*Jackson v. Gannon-Jackson*,
   72 Misc. 3d 1223(A) (N.Y. Sup. Ct. 2021) ............................................................... 9

*Jacob v. Lorenz*,
   No. 21 CIV. 6807(ER), 2022 WL 4096701 (S.D.N.Y. Sept. 7, 2022)..................... 7, 8, 17, 18

*Kennedy v. McKesson Co.*,
   58 N.Y.2d 500 (1983) ...................................................................................... 20

*Klaxon Co. v. Stentor Elec. Mfg. Co.*,
   313 U.S. 487 (1941) .......................................................................................... 8

*Komatsu v. City of N.Y.*,
   2021 U.S. Dist. LEXIS 132991 (S.D.N.Y. July 16, 2021) ................................ 20

*Konig v. WordPress.com*,
   112 A.D.3d 936 (2d Dept 2013) ...................................................................... 11

*Krepps v. Reiner*,
   588 F. Supp. 2d 471 (S.D.N.Y. 2008) ............................................................. 11

*Krzesaj v. Henry*,
   2017 U.S. Dist. LEXIS 37543 (S.D.N.Y. Mar. 15, 2017) ................................ 13

*LeBlanc v. Skinner*,
   103 A.D.3d 202 (2d Dep't 2012) ...................................................................... 9

*Lerman v. Flynt Distrib. Co.*,
   745 F.2d 123 (2d Cir. 1984) ............................................................................ 16

*Liberman v. Gelstein*,
   605 N.E.2d 344 (N.Y. 1992) ........................................................................... 10

*Masson v. New Yorker Magazine*,
   501 U.S. 496 (1991) ........................................................................................ 17

*McDougal v. Fox News Network, LLC*,
   489 F. Supp. 3d 174 (S.D.N.Y. 2020) ............................................................. 17

*McKenzie v. Dow Jones & Co., Inc.*,
   355 F. App'x 533 (2d Cir. 2009) ..................................................................... 22

*Medcalf v. Walsh*,
   938 F. Supp. 2d 478 (S.D.N.Y. 2013) ............................................................. 12

*Mr. Chow of New York v. STE Jour Azur S.A.*,
   759 F.2d 219 (2d Cir. 1985) ............................................................................ 14

*Nunez v. A-T Fin. Info. Inc.*,
   957 F. Supp. 438 (S.D.N.Y. Feb. 13, 1997) .................................................... 14

*Nyitray v. Johnson*,
   No. 96 Civ. 6150, 1998 WL 67651 (S.D.N.Y. Feb. 19, 1998) ........................ 19

*Ostrowsky v. Dep't of Educ.*,
    2013 WL 5963137 (E.D.N.Y. Nov. 7, 2013).................................................................... 22

*Privitera v. Phelps*,
    79 A.D.2d 1 (App. Div. 4th Dept. 1981) ........................................................................ 10

*Ratajack v. Brewster Fire Dep't, Inc.*,
    178 F. Supp. 3d 118 (S.D.N.Y. Mar. 31, 2016)............................................................ 14

*Rivers v. Towers, Perrin, Forster & Crosby Inc.*,
    2009 WL 817852 (E.D.N.Y. Mar. 27, 2009).................................................................. 21

*Silverman v. Daily News, L.P.*,
    129 A.D.3d 1054 (App. Div. 2d Dept. 2015) ................................................................ 15

*Snyder v. Phelps*,
    562 U.S. 443 (2011)........................................................................................................ 20

*Steinhilber v. Alphonse*,
    68 N.Y.2d 283 (1986).............................................................................................. 10, 18

*Thai v. Cayre Grp., Ltd.*,
    726 F.Supp. 2d 323 (S.D.N.Y. July 8, 2010)........................................................... 13, 22

*Washington Post Co. v. Keogh*,
    365 F.2d 965 (D.C. Cir. 1966)......................................................................................... 8


**Statutory Authorities**

18 U.S.C. § 2383................................................................................................................ 9, 10


**Additional Authorities**

*Capitol Insurrection: Tracking the Attack 1 Year Later,* ABC NEWS, (Jan. 4, 2022)
    https://abcnews.go.com/video/ (Jan. 4, 2022)............................................................... 12

Natalie Andrews, Lindsay Wise & Alexa Corse, *How Those Who Were There Look Back
    on Jan. 6 Capitol Riot*, WALL ST. J. (Jan. 6, 2022), https://www.wsj.com/articles/how-
    those-who-were-there-look-back-on-jan-6-capitol-riot-11641445262 (Jan. 6, 2022)............... 4

Dictionary.com, Slang Dictionary, https://www.dictionary.com/e/slang/throwback-
    thursday................................................................................................................................ 4

Fox News Video, Fallen Marine's sister Roice McCollum and her attorney explain the
defamation lawsuit on 'The Story', Facebook (Jan. 20, 2022)
https://m.facebook.com/watch/?v=316303503845547&_rdr. ................................................... 7

Hawa Allan, Ideas, *What the History of the Word "Insurrection" Says About Jan. 6,
Time*, https://time.com/6137604/history-insurrection-jan-6 (Jan. 7, 2022) ............................. 12

Jonathan Weisman & Annie Karni, *McConnell Denounces R.N.C. Censure of Jan. 6
Panel Members*, N.Y. TIMES (Feb. 8, 2022), https://www.nytimes.com/2022/02/08/
us/politics/republicans-censure-mcconnell.html............................................................................. 4

Li Cohen, *Jimmy Carter Pens Dire Warning at Insurrection Anniversary,* CBS NEWS,
https://www.cbsnews.com/news/jimmy-carter-insurrection-anniversary-dire-warning.
(Jan. 6, 2022) ................................................................................................................................ 12

Nikolas Lanum, *Sister of Wyoming Marine Killed in Kabul Says Biden's Apology
Looked 'Fake and Scripted', Fox News*  , https://www.foxnews.com/media/marine-
rylee-mccollum-family-biden-scripted-kabul. (Aug. 31, 2021) ................................................. 16

*Merriam-Webster English Dictionary* ................................................................................ 1, 2, 11

Opinion, Letters, *Was There an Insurrection on Jan. 6, 2021?*, WALL ST. J. (Jan. 10,
2022), https://www.wsj.com/articles/insurrection-capitol-riot-jan-january-6-trump-
11641594590.......... ..................................................................................................................... 12

Sean Sullivan, Dan Lamothe, Kareem Fahim & Haq Nawaz Khan, *Biden Meets with
Families of Service Members Killed in Kabul as U.S. Races To Exit Afghanistan*,
WASH POST. (Aug. 29, 2021), https://www.washingtonpost.com/politics/biden-meets-
with-families-of-service-members-killed-in-kabul-as-us-races-to-exit-afghanistan/
2021/08/29/c185ed78-08ca-11ec-aea1-42a8138f132a_story.html........................................... 16

US TVDB, The Story With Martha MacCallum, https://ustvdb.com/networks/fox-
news/shows/story-martha-maccallum/................................................................................... 6, 7

Defendant Alexander R. Baldwin III submits this memorandum of law in support of his motion to dismiss all causes of action in Plaintiffs Jiennah McCollum, Roice Joleen McCollum, and Cheyenne McCollum's first amended complaint.

## Preliminary Statement

This case is not about whether Lance Corporal Rylee McCollum is an American hero.  He clearly is.  It is not about whether the McCollum family has sacrificed for our country.  They clearly have.  Nor is this case a vehicle for creating new rules at the intersection of social media and political discussion.  Instead, this case presents two settled legal issues.  In response to Roice McCollum's public Instagram post about her in-person participation in the January 6, 2021 protest at the U.S. Capitol Building, which falsely claimed that the 2020 presidential election was stolen, Alec Baldwin expressed the widely held political opinion that participating in that protest was an act of "insurrection"—the *same* word that numerous Republicans, Democrats, media organizations, and even Senator McConnell have used to describe the events of January 6. Baldwin cannot be held liable for stating this political opinion.  A contrary ruling would violate the U.S. Constitution, violate U.S. Supreme Court and Second Circuit precedent, violate New York common law, and result in an outcome Plaintiffs themselves claim to detest: a society in which someone can be legally punished for political speech.  This case should be dismissed.

*First*, Plaintiffs have failed to state claims for defamation, defamation per se, or defamation by implication.  Plaintiffs argue that Baldwin committed defamation per se because he accused Roice of committing serious crimes by stating that participants in the events of January 6 are "insurrectionists."  Baldwin is not a lawyer, and it is clear from the dictionary that the plain

meaning of the word "insurrection" does not constitute a serious crime.[1]  This is just one of the first amended complaint's many legal flaws: Baldwin's statements constitute protected opinion on a matter of public concern, Plaintiffs are limited public figures and fail to plead actual malice, the claims based on Baldwin and Roice's private Instagram messages are defective because private communications between two parties cannot be defamatory, and Plaintiffs have failed to plead special damages.

*Second*, Plaintiffs cannot state claims for negligence, including negligent infliction of emotional distress, or gross negligence.  Plaintiffs do not adequately allege that Baldwin owed them any duty, and he cannot be held liable for negligence for stating his political opinion.  These claims also fail because Plaintiffs do not plead proximate causation, and the bare recitation of the elements of gross negligence does not suffice to plead it.

*Finally*, Plaintiffs fail to state a claim for intentional infliction of emotional distress.  They do not allege that Baldwin acted in an extreme and outrageous manner, as that standard has been articulated under New York law, because reposting a photo Roice herself publicly posted and then expressing a political opinion about it cannot be the basis for a claim.  If it were, the First Amendment protections that substantially limit the scope of permissible defamation claims would be irrelevant; plaintiffs could just assert claims for intentional infliction of emotional distress or other torts instead, thereby circumventing the protections of our Constitution.

In sum, Baldwin expressed his opinion about a matter of public concern.  Several others have expressed the same opinion as Baldwin about January 6.  Some have expressed the opposite

---

[1]    *See Merriam-Webster English Dictionary*, https://www.merriam-webster.com/dictionary/insurrection (defining "insurrection" as "an act or instance of revolting against civil authority or an established government"); *id.* at *https://www.merriam-webster.com/dictionary/revolt* (defining "revolt" as "to renounce allegiance or subjection (as to a government)" or, alternatively, "to experience disgust or shock").

opinion.  And there are opinion sections of major news outlets debating whether January 6 was an insurrection.  There's even a U.S. Congressional Committee investigating this issue.  Should we open the courthouse for claims against everyone who has publicly referred to January 6 as an "insurrection"—the Democratic Party, some members of the Republican Party, Senator McConnell, President Biden, nearly every major news organization, and more?  Would this case exist if Baldwin weren't a well-known actor?  Would Plaintiffs be asking for $25 million?  No, clearly not.  This is a political dispute masquerading as a lawsuit, motivated further by money.  The public square—not this Court—is the proper place to debate Alec Baldwin's opinion.

<u>**BACKGROUND**</u>

## I.   BALDWIN USES SOCIAL MEDIA TO POST OPINIONS

Baldwin is a famous actor.  (Am. Compl. ¶ 12.)  He maintains social media accounts.  (*Id.* ¶ 14.)  And Baldwin firmly holds sincere political views.  (*Id.* ¶¶ 12, 14.)  Baldwin frequently expresses his political opinions publicly, including on his social media accounts.  (*Id.*)  He uses those platforms to "regularly post[] videos and pictures featuring political statements, musings, anecdotes, and family outings."  (*Id.* ¶ 14.)  He also uses those platforms to "encourage . . . his followers to support various causes and to be politically and socially active."  (*Id.*)  Baldwin himself "support[s] various causes," and he uses social media to identify and participate in those causes.  (*Id.*)  It is through social media that Baldwin became aware of Plaintiffs and their own cause.  (*Id.* ¶ 20.)

## II.   BALDWIN CONTACTS ROICE ONLINE TO FACILITATE HIS DONATION TO A FUNDRAISER

On August 26, 2021, Plaintiffs' family member, LCPL McCollum, was killed in a bombing in Afghanistan.  (*Id.* ¶¶ 1, 15.)  At the time of his death, LCPL McCollum's wife, Jiennah, was pregnant with the couple's child.  (*Id.* ¶¶ 15, 20.)  Following her husband's death, an online fundraiser was started to raise money for Jiennah and their unborn baby.  (*Id.* ¶ 20.)  Baldwin

became aware of LCPL McCollum's death from the news, and he found the fundraiser through Instagram.  (*Id.*)  Baldwin wished to pay tribute to a fallen Marine and provide support for his widow and their child.  (*Id.*)  Baldwin privately contacted Roice, LCPL McCollum's sister, through her Instagram account to coordinate his $5,000 donation.  (*Id*.)

### III.   ROICE POSTS ON INSTAGRAM A PICTURE OF THE JANUARY 6, 2021 EVENT AT THE CAPITOL TO CELEBRATE HER PARTICIPATION AND THE ONE-YEAR ANNIVERSARY

In early January 2022, Roice posted a photograph to her public Instagram account.  (*Id.* ¶¶ 18-19; Ex. A at 2.)  The image is instantly recognizable.  It shows a large crowd of people in front of the Washington Monument, many of them wearing "Make America Great Again" hats and waving flags bearing the name of the former President.  (*Id*.)  This was the January 6, 2021 protest of the certification of the 2020 presidential election, an event that led to a violent siege on the U.S. Capitol.  (*Id.* ¶ 18.)  Although January 6 may have begun as a "protest" (*id.* ¶¶ 18-19), those preceding events unmistakably set the stage for the fatal attack that followed.  Both liberals and conservatives have referred to the events of January 6 as a "riot" or "insurrection."[2]

Roice took the picture while present at the January 6 events in Washington, D.C.  (*Id.*)  The caption to Roice's Instagram post read "Throwback,"[3] followed by several lighthearted and patriotic emojis.  (*Id.*; Ex. A at 2.)  She was celebrating, in Plaintiffs' words, "in anticipation of the January 6, 2022, one-year anniversary of her attendance" at this event (*id.* ¶ 18)—an event that

---

[2]   *See, e.g.*, Natalie Andrews, Lindsay Wise & Alexa Corse, *How Those Who Were There Look Back on Jan. 6 Capitol Riot*, WALL ST. J. (Jan. 6, 2022), https://www.wsj.com/articles/how-those-who-were-there-look-back-on-jan-6-capitol-riot-11641445262; Jonathan Weisman & Annie Karni, *McConnell Denounces R.N.C. Censure of Jan. 6 Panel Members*, N.Y. TIMES (Feb. 8, 2022), https://www.nytimes.com/2022/02/08/us/politics/republicans-censure-mcconnell.html (noting that Senator Mitch McConnell referred to January 6 as a "violent insurrection").

[3]   "Throwback" refers to "a social-media trend when users . . . post photographs or recollections of the past[.]" Dictionary.com, Slang Dictionary, https://www.dictionary.com/e/slang/throwback-thursday.

attacked our democracy and led to destruction and death.

## IV.   BALDWIN EXPRESSES HIS POLITICAL OPINION

Baldwin saw Roice's Instagram post and was surprised to learn that Roice may have participated in the events of January 6.  (*Id.* ¶ 20; Ex. A at 2-3.)  To confirm whether he had recalled Roice's identity correctly, Baldwin commented on Roice's Instagram post: "Are you the same woman that I sent the $ to for your sister's husband who was killed during the Afghanistan exit"? (*Id.* ¶ 20; Ex. A at 2.)  Roice confirmed that she was Jiennah's sister-in-law.  (*Id.* ¶ 21.)

Baldwin then exchanged private Instagram messages with Roice—messages incapable of becoming public unless Roice or Baldwin separately published them (which they didn't)—in which he privately accused her of being a "January 6th rioter."  (*Id.* ¶¶ 21-22.)  In response, Roice did not deny being a "January 6th rioter."  Exactly the opposite: she expressly confirmed her participation, stating "Protesting is perfectly legal in this country and I've already had my sit down with the fbi.  Thanks, have a nice day!" (*Id.* ¶ 22.)  Baldwin responded that Roice's "brother fought for this country bravely and honestly," but the January 6 riot that Roice did not deny participating in "resulted in the unlawful destruction of government property, the death of a law enforcement officer, [and] an assault on the certification of the presidential election."  (*Id.*)

At that point, Baldwin was struck by the irony that his tribute to a fallen Marine, a patriot, was coordinated by an individual who participated in an event that—in Baldwin's and many other people's opinion—was an assault on the core of American democracy.  (*Id.* ¶ 24; Ex. A at 3-4, 8.) Consistent with his longstanding use of social media to address political matters (*id.* ¶¶ 12, 14), Baldwin expressed his opinion.  (*Id.* ¶ 24, 29; Ex. A at 3.)  Baldwin reposted Roice's publicly posted January 6 photograph on his own Instagram feed.  (*Id.* ¶ 28; Ex. A at 3.)  He added a caption accompanying the post.  (*Id.* ¶ 29, Ex. A at 3.)  His caption accurately stated the circumstances of his acquaintance with Roice, as Plaintiffs themselves recount those facts.  (*Id.* ¶ 29; Ex. A at 3; *see*

*id.* ¶ 20.)  The caption did not reference by name Roice, Jiennah, Cheyenne, or any other member of the McCollum family.  (*Id.* ¶ 29; Ex. A at 3.)  Baldwin's caption ended with a comment about the irony he observed:  "Then I find this.  Truth is stranger than fiction."  (*Id.*)  "This" referred to the photograph, which Roice herself had thrust into the public eye on her own Instagram account. (*Id.* ¶ 18; Ex. A at 2-3.)  As Plaintiffs admit, Roice was proud to be associated with the photograph: she promoted it publicly "in anticipation of the . . . one-year anniversary" of January 6, with a "Throwback" caption and celebratory emojis.  (*Id.* ¶ 18; Ex. A at 2.)

## V.   MEMBERS OF THE PUBLIC EXPRESS THEIR OPINIONS, DISAGREEING WITH ROICE'S PARTICIPATION IN THE EVENTS OF JANUARY 6

Plaintiffs allege that they began to receive unwanted, hateful Instagram messages following Baldwin's repost of Roice's photograph—the photograph that *she* publicly posted and was *celebrating* publicly.  (*Id.* ¶¶ 32, 36-37, 40.)  But third parties sent those messages.  (*Id.* ¶ 32, 34; Ex. A at 5-6, 9-21.)  And Baldwin publicly denounced the hateful messages and reiterated that his disagreement with Roice's conduct did not affect the support he had extended to her family.  (*See id.* ¶ 33; Ex. A at 5, 8.)  For example, Baldwin commented on the offensive messages, "I find that abhorrent[.]  My feelings were expressed by my gesture on behalf of your brother."  (*Id.* Ex. A at 5.)  In a few follow-up posts on his general Instagram account, Baldwin also clarified the opinion he had expressed: the irony of the situation and that Roice was an "insurrectionist" for participating in the January 6 events.  (*E.g.*, *id.* ¶ 24; Ex. A at 5, 7-8.)  Baldwin did not publicly state that Roice was a "rioter" or say anything else the amended complaint alleges to be defamatory.  The documents attached to and incorporated into the amended complaint—the Instagram posts—make that clear.

## VI.    ROICE SUES BALDWIN FOR MILLIONS AND GOES ON FOX NEWS

Plaintiffs sued Baldwin in Wyoming District Court for millions in compensatory and punitive damages—a lawsuit they publicized nationally.  Shortly after filing, Roice appeared on a January 20, 2022 Fox News segment, "The Story with Martha MacCallum," alongside her counsel, Mr. Postiglioni.[4]  Plaintiffs apparently have no problem with national attention when the audience of 1.5 million Fox viewers is more likely to agree with their views than Baldwin's followers.[5]

When asked how Plaintiffs' counsel arrived at the number for damages, Mr. Postiglioni responded, "[t]he number we get to is a number that will make Mr. Baldwin pay attention.  He's clearly not learned this lesson …. and Baldwin's got a lot of money and the punitive number has to get his attention."[6]  Plaintiffs' counsel offered no other explanation.  Plaintiffs and their counsel simply want a big check to punish Baldwin for expressing an opinion they disagree with.  Plaintiffs' initial complaint in Wyoming was dismissed for lack of personal jurisdiction, and Plaintiffs have now refiled substantially the same claims in New York.

## LEGAL STANDARD

To survive a motion to dismiss, a complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Cohen v. Rosicki, Rosicki & Assocs., P.C.*, 897 F.3d 75, 80 (2d Cir. 2018) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678, (2009)).   However, the court is not required to credit "mere conclusory statements" or "[t]hreadbare recitals of the elements of a cause of action."  *Jacob v. Lorenz*, 2022 WL 4096701, at *5 (S.D.N.Y. Sept. 7, 2022*)* (Ramos, J.) (quoting *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, (2007))).   "More specifically, the plaintiff must allege sufficient

---

[4] Available at: *https://m.facebook.com/watch/?v=316303503845547&_rdr.*

[5] Statistics available at: *https://ustvdb.com/networks/fox-news/shows/story-martha-maccallum/.*

[6] *Infra* at n.4.

facts to show more than a sheer possibility that a defendant has acted unlawfully.  If the plaintiff has not nudged [his] claims across the line from conceivable to plausible, [the] complaint must be dismissed." *Id.*

Because defamation suits "may be as chilling to the exercise of First Amendment freedoms as fear of the outcome of the lawsuit itself," courts should, where possible, resolve defamation actions at the pleading stage.  *Adelson v. Harris*, 973 F. Supp. 2d 467, 481 (S.D.N.Y. 2013) (quoting *Washington Post Co. v. Keogh*, 365 F.2d 965, 968 (D.C. Cir. 1966)); *see also Biro v. Condé Nast*, 883 F. Supp. 2d 441, 457 (S.D.N.Y. Aug. 9, 2012) (noting that there is "particular value" in resolving defamation claims at the pleading stage).[7]

## ARGUMENT

---

[7] This Court sits in New York and therefore applies New York choice-of-law rules.  *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941); *Adelson v. Harris*, 973 F. Supp. 2d 467, 476 (S.D.N.Y. 2013) (same).  The Second Circuit has established that "[d]iscouraging defamation is a conduct regulating rule," *Lee v. Bankers Trust Co.*, 166 F.3d 540, 545 (2d Cir. 1999) (citation omitted), which ordinarily requires application of the law in the jurisdiction where the alleged tort occurred "because that jurisdiction has the greatest interest in regulating behavior within its borders."  *Cooney v. Osgood Mach., Inc.*, 81 N.Y.2d 66, 72 (1993).  In defamation cases where the statement is published nationally, the defendant resides in New York, and "the tort essentially lacks a locus," New York's "strong policy interests in regulating the conduct of its citizens and its media" tends to outweigh the interests of other jurisdictions. *Jacob v. Lorenz*, No. 21 CIV. 6807 (ER), 2022 WL 4096701, at *6 (S.D.N.Y. Sept. 7, 2022) (Ramos, J.).  Here, Plaintiffs reside in Wyoming and North Carolina, and Baldwin resides in the forum state.  Plaintiffs purport to seek remedies under New York law and claim "a substantial part of the events or omissions giving rise to these claims occurred in New York, New York."  (Am. Compl. ¶ 7.)  Courts have indicated a clear preference for applying New York law in similar situations.  *See, e.g.*, *Davis v. Costa-Gavras*, 580 F. Supp. 1082, 1092-93 (S.D.N.Y. 1984) ("There is a serious question of deprivation of the defendant's due process rights [in] casting him in liability under the law of a state with which he [has] in no way voluntarily associated himself[.]") (quotation marks omitted); *Adelson v. Harris*, 973 F. Supp. 2d 467, 479 (S.D.N.Y. 2013) (noting that the court is particularly willing to apply the law of the defendants' domicile when it is also the forum state) (citing *Costa-Gavras*, 580 F. Supp. at 1093).

I.  **PLAINTIFFS FAIL TO STATE ANY CLAIMS FOR DEFAMATION, DEFAMATION PER SE, AND DEFAMATION BY IMPLICATION**

   A.    **Roice's private communications with Baldwin are not actionable**

Plaintiffs repeatedly refer to Baldwin's private communications with Roice to support their position that he "define[d] [insurrection] for his 2.4 million followers."  (Am. Compl. ¶¶ 20-22, 26-27, 30; Ex. A at 2-3).  Plaintiffs are incorrect.

To properly allege a claim of defamation under New York law, a plaintiff must plead "(1) a written defamatory statement of and concerning the plaintiff, (2) *publication to a third party*, (3) fault, (4) falsity of the defamatory statement, and (5) special damages or per se actionability." *Ganske v. Mensch*, 2020 WL 4890423 (S.D.N.Y. Aug. 20, 2020) (tweet calling plaintiff "xenophobic" conveyed "a strong signal to a reasonable [Twitter user] that this was [d]efendant's opinion") (emphasis added).

Here, Baldwin's private Instagram messages with Roice are not actionable because only published material can be defamatory.  In particular, the statements did not magically become available to either Baldwin's or Roice's followers unless either party separately published the statements.  They did not, and Plaintiffs do not and cannot allege otherwise without violating Rule 11 and contradicting the Instagram documents they've incorporated into the amended complaint. All claims and arguments based on those private messages must therefore be dismissed.

   B.    **Plaintiffs do not state a claim for defamation per se because Baldwin did not impute to Plaintiffs a criminal offense**

Under New York law, the only statements classified as defamatory per se are those "(i) charging plaintiff with a serious crime; (ii) that tend to injure another in his or her trade, business or profession; (iii) that plaintiff has a loathsome disease; or (iv) imputing unchastity to a woman." *Jackson v. Gannon-Jackson*, 72 Misc.3d 1223(A) (N.Y. Sup. Ct. 2021);  *see also LeBlanc v. Skinner*, 103 A.D.3d 202 (2d Dep't 2012) (comment on newspaper's internet forum referring to

plaintiff as "a terrorist" did not constitute defamation per se because the statement was likely to be perceived as rhetorical hyperbole rather than proof of criminal offense).  While Plaintiffs allege that Baldwin imputed to them the commission of a crime (Am. Compl. ¶¶ 84-85), they have misconstrued the law and misrepresented the documents they've incorporated into the complaint.

*First*, Plaintiffs claim Baldwin's use of the words "insurrectionist" and "rioter" suffice to impute to them criminal offenses under 18 U.S. Code § 2383.  (*Id.*; *see id.* ¶¶ 27, 82, 89.)  But New York law has long held that, to be actionable *per se*, "words charging plaintiff with a crime …. must impute to plaintiff the commission of an indictable offense upon conviction of which punishment may be inflicted."  *Privitera v. Phelps*, 79 A.D.2d 1, 3 (App. Div. 4th Dept. 1981) (citing *Anonymous*, 60 N.Y. 262, 264 (1875) and *Brooker v. Coffin*, 5 Johns 188 (1809));  *see also Liberman v. Gelstein*, 605 N.E.2d 344, 347 (1992) (qualifying *Privitera* to require that the statements charge plaintiff with a serious crime to be actionable).  And it is not enough that the words suggest membership or allegiance with a criminal group because "[p]eople are indicted for what they do, not for their associations or beliefs, and membership in an organization, even membership in an organization having a criminal purpose, is not an indictable offense."  *Privitera* 79 A.D.2d at 4 (accusations of being part of the Mafia did not rise to an indictable offense);  *see also Gurtler v. Union Parts Mfg. Co.*, 285 A.D. 643, 644 (App. Div. 1st Dept. 1955) (charge that plaintiff was a Communist).

*Second*, Baldwin did not say what Plaintiffs allege, which is clear from the documents they've attached to the complaint.  Though Plaintiffs argue that Baldwin accused them of violating 18 U.S.C. § 2383 for "participati[ng] in a rebellion and uprising against the United States Government" (Am. Compl. ¶¶ 85), New York Courts have repeatedly held that "[c]hallenged statements are not to be read in isolation, but must be perused as the average reader would against

the 'whole apparent scope and intent' of the writing." *Biro v. Condé Nast*, 883 F. Supp. 2d 441, 457 (S.D.N.Y. Aug. 9, 2012) (quoting *Celle*, 209 F.3d at 177); *see also Steinhilber v. Alphonse*, 68 N.Y.2d 283, 294 (1986) ("Consideration of the circumstances and of the broader social context" confirms that allegedly defamatory statements "would be taken by the ordinary person not literally, but figuratively"). Moreover, Baldwin's actual statement—the use of the word "insurrection"— did not accuse Plaintiffs of committing a crime. Baldwin's language merely implied that Roice was at the January 6 protests, which she admitted. *See, e.g.*, *Finkelstein v. Wachtel*, 2003 WL 1918309, at *6 (S.D.N.Y. Apr. 21, 2003) (a consultant's statements that a failing company's CEO was a "crook" who ran a "very dirty business" were viewed as loose, figurative, or hyperbolic, and were thus not actionable).

*Third*, Baldwin published his statement on social media, not in a publication known for rigorous reporting. *See, e.g.*, *Biro v. Condé Nast*, 883 F. Supp. 2d 441, 457 (S.D.N.Y. Aug. 9, 2012) (allegedly defamatory statements should be construed "as they would be commonly understood ... in the context of their publication"); *Brian v. Richardson*, 87 NY2d 46, 52 (1995) ("a medium that is typically regarded by the public as a vehicle for the expression of individual opinion [such as Facebook] rather than the rigorous and comprehensive presentation of factual matter" suggests that a reader would not understand the statements to be anything but "vigorous expressions of personal opinion"); *Konig v. WordPress.com*, 112 A.D.3d 936, 937 (2d Dept 2013) ("given the context in which the challenged statements were made, on an Internet blog ... a reasonable reader would have believed that the generalized reference to 'downright criminal actions' ... was not a factual accusation of criminal conduct").

*Fourth*, it is readily apparent that Baldwin, who is not a lawyer or an expert on the U.S. Code, loosely used the word "insurrection" to convey its plain dictionary meaning: "an act or

instance of revolting against civil authority or an established government."[8]  The plain meaning of Baldwin's statement—his opinion that the January 6 events, which attacked a legitimate presidential election, constituted an act of revolt against our civil government—does not accuse Plaintiffs of committing a crime.[9]  *See Krepps v. Reiner*, 588 F. Supp. 2d 471, 484 (S.D.N.Y. 2008), *aff'd*, 377 F. App'x 65 (2d Cir. 2010) ("Allegedly defamatory statements should be construed not with the close precision expected from lawyers and judges but as they would be read and understood by the public to which they are addressed.")  Instead, it describes an opinion of the January 6 events that has been expressed, in identical terms, by virtually every major news organization in America and by numerous public officials, including the current President and the Republican Senate Majority Leader at the time.[10]

There are also opinion sections of major news organizations, including *Time* and the *Wall Street Journal*, debating whether January 6 was an insurrection.[11]  Baldwin participated in that ongoing political debate of extreme public importance when he used the word "insurrectionist" to describe Roice's participation in the January 6 events.  That is not defamation per se.  *See, e.g.*,

---

[8]    *Merriam-Webster English Dictionary*, https://www.merriam-webster.com/dictionary /insurrection.

[9]    *See Merriam-Webster English Dictionary*, *https://www.merriam-webster.com/dictionary/revolt* (defining "revolt" as "to renounce allegiance or subjection (as to a government)" or, alternatively, "to experience disgust or shock")

[10] Even a cursory internet search shows that numerous news organizations have referred to January 6 as an insurrection, including ABC, CBS, CNN, the *Los Angeles Times*, NBC, the *New York Times*, PBS, *USA Today*, and the *Washington Post*.  *See, e.g.*, *Capitol Insurrection: Tracking the Attack 1 Year Later*, ABC NEWS (Jan. 4, 2022), https://abcnews.go.com/video/ embed?id=75158232; Li Cohen, *Jimmy Carter Pens Dire Warning at Insurrection Anniversary*, CBS NEWS (Jan. 6, 2022), https://www.cbsnews.com/news/jimmy-carter-insurrection-anniversary-dire-warning.

[11] *See, e.g.*, Hawa Allan, Ideas, *What the History of the Word "Insurrection" Says About Jan. 6*, TIME (Jan. 7, 2022), https://time.com/6137604/history-insurrection-jan-6; Opinion, Letters, *Was There an Insurrection on Jan. 6, 2021?*, WALL ST. J. (Jan. 10, 2022), https://www.wsj.com/articles/insurrection-capitol-riot-jan-january-6-trump-11641594590.

*Medcalf v. Walsh*, 938 F. Supp. 2d 478, 486 (S.D.N.Y. 2013) (dismissing claims because "a statement of opinion that is accompanied by a recitation of the facts on which it is based or one that does not imply the existence of undisclosed underlying facts' is protected as a statement of opinion and thus not a false statement of fact").  Baldwin did not accuse Roice of violating the U.S. Code.  Rather, he simply expressed his disagreement with the opinion that Roice herself had announced to the world—that her participation in the January 6 events was patriotic, deserving of celebration and a showcase of American flags.  The real irony here is that Roice is suing Baldwin for expressing his widely supported opinion about January 6, when Roice had written to him moments before that her participation at an event that promoted the false assertion that the 2020 election was stolen constitutes the "freedom of protest."

*Finally*, Baldwin never publicly stated that Roice was a "rioter."  As the exhibit incorporated into the amended complaint makes clear, there is no evidence of that statement being public.  Baldwin made that statement solely to Roice in a private message.  (Am. Compl. ¶¶ 20-22; Ex. A at 3.)  As discussed above, that private statement is not actionable.  Plaintiffs' defamation per se claim should thus be dismissed.  *See Biro*, 883 F. Supp. 2d at 457 (New York courts encourage the resolution of "defamation claims at the pleading stage, 'so as not to protract litigation through discovery and trial and thereby chill the exercise of constitutionally protected freedoms'").

### C.  Plaintiffs do not plead special damages

Under New York law, a claim for defamation must allege special damages unless it is one for defamation per se.  *See, e.g.*, *Krzesaj v. Henry*, 2017 U.S. Dist. LEXIS 37543, at *39-40 (S.D.N.Y. Mar. 15, 2017) (Ramos, J.).  Plaintiffs have done neither.

Special damages "must flow directly from the injury to reputation caused by the defamation" and "must be fully and accurately stated, with sufficient particularity to identify actual

losses," such as with economic or pecuniary damages. *Id.* (dismissing defamation claim for failure to plead special damages or per se defamation).

Here, Roice does not adequately pled special damages because she does not allege that she suffered any economic or pecuniary losses beyond vague "medical bills and other expenses" allegedly incurred by all Plaintiffs.  (Am. Compl. ¶ 43.)  Instead, Plaintiffs' claimed injuries are physical and emotional, *see* Am. Compl. ¶¶ 43, 53, 56, 58, 61, 70, 73, 78, 101, 104, 106, 109 (alleging Plaintiffs suffered, for example, "emotional distress, anxiety, and fear"), making them too general to satisfy the "specific and measurable loss" standard.  *Thai v. Cayre Grp., Ltd*., 726 F. Supp. 2d 323, 330 (S.D.N.Y. July 8, 2010) ("The particularity requirement is strictly applied, as courts will dismiss defamation claims for failure to allege special damages with the requisite degree of specificity.") (quotation omitted); *Nunez v. A-T Fin. Info. Inc*., 957 F. Supp. 438, 441 (S.D.N.Y. Feb. 13, 1997) ("[R]ound figures or a general allegation of a dollar amount ... will not suffice.").

Roice and her counsel's appearance on Fox News also made clear that Plaintiffs' alleged damages are arbitrary, and entirely based on Baldwin's wealth, because they stated for millions of viewers that "[t]he number we get to is a number that will make Mr. Baldwin pay attention .… and Baldwin's got a lot of money and the punitive number has to get his attention."[12]  Plaintiffs' counsel offered no other explanation of their alleged harm.  But a defendant's wealth is certainly no basis for special damages, and Baldwin cannot be sued for defamation merely because Plaintiffs and their counsel want a big check.

---

[12] *Infra* at n.4.

Finally, Roice concedes she does not plead special damages because she alleges that she has pleaded defamation per se and thus her claims are "actionable without proof of special damages." (*Id.* ¶¶ 85.)  Accordingly, Plaintiffs' defamation claims must be dismissed.

### D.    Plaintiffs' defamation claims fail for several other independent reasons

Plaintiffs' defamation claims suffer from several other independent flaws that require dismissal.

*First*, Baldwin's statements are not actionable because, as any ordinary reader would see, they constitute his protected opinion on a matter of public concern.  *See, e.g.*, *Mr. Chow of New York v. STE Jour Azur S.A.,* 759 F.2d 219, 224 (2d Cir. 1985) ("The inquiry into whether a statement should be viewed as one of fact or one of opinion must be made from the perspective of an 'ordinary reader' of the statement.");  *Ratajack v. Brewster Fire Dep't, Inc. of the Brewster-Se. Joint Fire Dist.*, 178 F. Supp. 3d 118, 166 (S.D.N.Y. Mar. 31, 2016) ("articulated concerns that Plaintiff was a racist or a future threat to others—is nonactionable opinion").  "[P]rotection afforded by the guarantees of free press and speech in the New York Constitution is often broader than the minimum required by" federal law and surely covers the opinion at issue here.  *Immuno AG v. Moor-Jankowski*, 567 N.E.2d 1270, 1280 (1991) (granting motion to dismiss and noting that expressions of "pure" opinion receive absolute constitutional protection under the New York Constitution);  *Flamm v. American Assoc. of Univ. Women,* 201 F.3d 144, 147-48 (2d Cir. 2000) (same);  *Silverman v. Daily News, L.P.*, 129 A.D.3d 1054 (App. Div. 2d Dept. 2015) (newspaper article questioning whether principal who had allegedly authored "racist writings" and had ties to a "white supremacist group" should be in charge of a diverse school was not actionable as libel, in part because "there was full disclosure of the facts supporting the opinions");  *Daniel Goldreyer, Ltd. v. Van de Wetering*, 217 A.D.2d 434, 435 (App. Div. 1st Dept. 1995) ("imaginative expression" and "rhetorical hyperbole" are "pure" opinion protected by the New York

15

constitution).

The events of January 6 are unquestionably a matter of public concern for the reasons explained above, and Plaintiffs concede that Baldwin's Instagram account "regularly" features "his political statements [and] musings" and that Baldwin is "very outspoken," "politically active and . . . . opinionated." (Am. Compl. ¶¶ 12, 14, 33.) *See, e.g.*, *Blair v. Inside Ed. Prods*., 7 F. Supp. 3d 348, 357 (S.D.N.Y. 2014) (finding statements on whether plaintiff was a "squatter" to be "related to a matter of political, social, or other concern to the community" and "a subject of legitimate news interest; that is, a subject of general interest and of value and concern to the public") (quotation omitted).  Plaintiffs even allege that Baldwin "*believes* that every person present at the Capitol demonstration on January 6, 2021, is an unrepentant rioter[.]" (Am. Compl. ¶ 110 (emphasis added).)  Again, the problem for Plaintiffs is that Baldwin's beliefs and opinions—based on facts disclosed to the public by Roice herself—are not actionable.

*Second*, Plaintiffs are limited public figures with respect to the issues addressed in Baldwin's opinion, but they fail to plead actual malice.  A limited public figure under New York law is an individual who has "successfully invited public attention to h[er] views in an effort to influence others prior to the incident that is the subject of litigation," "voluntarily injected [her]self into a public controversy related to the subject of the litigation," and "maintained regular and continuing access to the media." *Barbash v. STX Fin., Ltd. Liab. Co.*, 2020 WL 6586155, at *5 (S.D.N.Y. Nov. 10, 2020) (quoting *Lerman v. Flynt Distrib. Co.,* 745 F.2d 123, 136-37 (2d Cir. 1984)).  That's so here.  Roice voluntarily placed herself in the debate: she posted her January 6 image publicly, included a caption celebrating the anniversary of that event, and engaged with Baldwin about it.  (Am. Compl. ¶¶ 18-22.)  Roice could have chosen not to inject herself into this debate or post her photograph.  But she did the opposite.  (*Id.*; Ex. A at 5-6.)  Even after filing suit,

16

she chose to appear on Fox News to an audience of 1.5 million people.[13]  Plaintiffs also affirmatively made themselves limited public figures with respect to the political issues surrounding LCPL McCollum's tragic death, an event that is, unfortunately, inextricably intertwined with this action.[14]  Plaintiffs cannot now claim the shield afforded a private figure under the law.

Because they are limited public figures, Plaintiffs cannot maintain their causes of action for defamation unless they adequately plead actual malice: "that is, with knowledge that the statements were false or with reckless disregard as to their falsity."  *Biro v. Condé Nast*, 807 F.3d 541, 544 (2d Cir. 2015);  *Masson v. New Yorker Magazine*, 501 U.S. 496, (1991) (noting that actual malice is "a term of art denoting deliberate or reckless falsification");  *Lorenz*, 2022 WL 4096701, at *12 (Ramos, J.) (same).  They haven't.  Instead, Plaintiffs merely state that "even if [Roice] can be deemed to be a 'limited public figure' for the purposes of this lawsuit, Plaintiffs are informed and believe and allege that [Baldwin] acted with actual malice[.]"  (*Id.* ¶ 81.)  But this is exactly the type of "formulaic recitation of the elements of a cause of action" that will not survive a motion to dismiss.  *Iqbal*, 556 U.S. at 678.

Plaintiffs also claim Baldwin acted with actual malice "because he knew, or should have known, that [his actions] would result in an avalanche of violently negative attacks on Plaintiffs."  (Am. Compl. ¶ 86.)  Plaintiffs misunderstand the law.  Their allegation does not assert that Baldwin

---

[13] *See infra* at n. 4

[14] *See* Sean Sullivan, Dan Lamothe, Kareem Fahim & Haq Nawaz Khan, *Biden Meets with Families of Service Members Killed in Kabul as U.S. Races To Exit Afghanistan*, WASH. POST (Aug. 29, 2021), https://www.washingtonpost.com/politics/biden-meets-with-families-of-service-members-killed-in-kabul-as-us-races-to-exit-afghanistan/2021/08/29/c185ed78-08ca-11ec-aea1-42a8138f132a_story.html; Nikolas Lanum, *Sister of Wyoming Marine Killed in Kabul Says Biden's Apology Looked 'Fake and Scripted'*, FOX NEWS (Aug. 31, 2021), https://www.foxnews.com/media/marine-rylee-mccollum-family-biden-scripted-kabul.

believed his statements were false, which is the requirement for pleading actual malice. *See, e.g.*, *Masson*, 501 U.S. at 510 (defendant's "[m]ere negligence does not suffice" to plead actual malice); *Lorenz*, 2022 WL 4096701, at *12 ("[T]he critical question is the state of mind of those responsible for the publication.") (Ramos, J.); *Church of Scientology Int'l v. Behar*, 238 F.3d 168, 174 (2d Cir. 2001) (reckless conduct needed to show actual malice is measured by whether "there is sufficient evidence to permit the conclusion that the defendant in fact entertained serious doubts as to the truth of his publication") (quotation omitted); *McDougal v. Fox News Network, LLC*, 489 F. Supp. 3d 174, 185 (S.D.N.Y. 2020) ("personal biases do not establish actual malice without additional facts" showing "knowledge" or belief of falsity).  On the contrary, Plaintiffs undermine their claims by alleging Baldwin "believes" what he said—"that every person present at the Capitol demonstration on January 6, 2021, is an unrepentant rioter[.]"  (Am. Compl. ¶ 87.)

*Third*, Baldwin's statements are not defamatory.  A defamatory statement is one that "exposes an individual to public hatred, shame, obloquy, contumely, odium, contempt, ridicule, aversion, ostracism, degradation, or disgrace, or induces an evil opinion of one in the minds of right-thinking persons, and deprives one of confidence and friendly intercourse in society." *Lorenz*, 2022 WL 4096701, at *10 (Ramos, J.).  Though Plaintiffs ask the court to infer defamatory meaning, it has long been the "standard in defamation actions to read published articles in context to test their effect on the average reader, not to isolate particular phrases but to consider the publication as a whole." *Immuno AG v. Moor-Jankowski*, 567 N.E.2d 1270, 1278 (1991);  *see also Steinhilber*, 68 N.Y.2d at 290 (noting that the "essential task" is to consider the words complained of in the context of the entire communication and of the circumstances in which they were spoken or written); *Brian v. Richardson*, 87 N.Y.2d 46, 51 (N.Y. 1995) (citing *Immuno* for the proposition that courts should not "sift[] through a communication" to pick out assertions of fact, but should

instead look to the overall context in which the alleged defamation was said).

Baldwin's only references to Plaintiffs in his post of Roice's January 6 photograph are as follows: "I read in The Times, I believe, the story about the soldiers that died at the Kabul airport. I did some research.  I found, on IG [Instagram], that this woman is the [sister] of one of the men who was killed.  I offered to send her sister-in-law some $ as a tribute to her late brother, his widow and their child.  Which I did.  As a tribute to a fallen soldier.  Then I find this.  Truth is stranger than fiction." (Am. Compl. ¶ 29, Ex. A at 3.)

But none of those words, individually or collectively, "expose[]" Plaintiffs to "hatred, shame  …. contempt, ridicule …. or disgrace."  *Lorenz*, 2022 WL 4096701, at *10 (quotation omitted).  Instead, they are purely a recitation of facts.  If any content contained within Baldwin's Instagram post meets that standard, it is the photograph itself.  But the photograph is *Roice's* public statement—not Baldwin's.  While "statements themselves may be literally true yet still actionable as defamatory by implication,"  in order "to sustain either one of these claims, the implication or innuendo from those statements must be false in order to be defamatory."  *Henry v. Fox News Network LLC*, 2022 WL 4356730, at *8 (S.D.N.Y. Sept. 20, 2022) (statements claiming plaintiff engaged in willful sexual misconduct were not defamatory because plaintiff failed to allege they are false).  Roice admits that she was present at the Capitol on January 6, and she was clearly proud of her conduct when she posted her cheerful "Throwback" photograph to her own public Instagram account.  (Am. Compl. ¶¶ 18, 20; Ex. A at 2.)  Plaintiffs cannot now allege that Baldwin's amplification of Roice's *already-public* image is defamatory, because the damage to Plaintiff's reputation, if any exists, was complete upon Roice's original posting of the image.

Nor do Plaintiffs adequately allege that Baldwin's comments to Roice or other Instagram users containing the word "insurrectionist" are actionable.  Baldwin's opinion is incidental to his

reposting of Roice's photograph, a fact made public by Roice that speaks for itself.  In other words, the third-party posts that Plaintiffs claim to be offensive all criticized Plaintiffs because Roice *participated* in the January 6 events and then publicly celebrated that fact with a photograph.  (*See, e.g.*, Am. Compl. ¶¶ 33, 35, Ex. A at 9-14, 19-20.)  If Roice had not participated in the January 6 events, the third-party criticism wouldn't have followed.

The bottom line is that Plaintiffs cannot assert a defamation claim in these circumstances because "[i]t is axiomatic that truth is an absolute, unqualified defense to a civil defamation action . . . and that substantial truth is all that is required."  *Nyitray v. Johnson,* No. 96 Civ. 6150, 1998 WL 67651, at *10 (S.D.N.Y. Feb. 19, 1998) (internal quotation omitted).  Here, the defamatory sting of the publication is from Roice's own photograph and celebration of January 6, facts that Plaintiffs readily admit—not Baldwin's related opinion.

## II.   Plaintiffs Fail to State Claims for Negligence, Gross Negligence, and Negligent Infliction of Emotional Distress

"Under New York law," any tort sounding in negligence requires "a breach of duty owed to the plaintiff," proximate cause "between the conduct and the injury," and, in the case of negligent infliction of emotional distress, "severe emotional distress."  *Francis v. Kings Park Manor, Inc*., 14–CV–3555, 2015 WL 1189579, at *13 (E.D.N.Y. Mar. 16, 2015) (citations and quotation omitted).  Plaintiffs cannot satisfy any of these elements.

Plaintiffs do not allege that any common law or statute imposed a duty on Baldwin.  Nor could they.  Baldwin stated his opinion.  While third parties may have reacted to Baldwin's opinion in an offensive manner, "there is no duty to protect from emotional injury a bystander to whom there is otherwise owed no duty." *Kennedy v. McKesson Co*., 58 N.Y.2d 500, 506 (1983).  Further, ruling otherwise would allow Plaintiffs to circumvent the First Amendment by transforming a meritless defamation claim into any number of other torts.  The law does not permit such a

20

maneuver.  *See, e.g.*, *Snyder v. Phelps*, 562 U.S. 443, 451 (2011) (the First Amendment "serve[s] as a defense in state tort suits");  *Chinese Americans C.R. Coal., Inc. v. Trump*, No. 21-CV-4548 (JGK), 2022 WL 1443387, at *6 (S.D.N.Y. May 6, 2022) (imposing tort liability for the alleged statements would violate the First Amendment).

Plaintiffs' negligence claim also fails because they do not plead proximate causation. Proximate causation is when injury is "a direct, rather than a consequential, result of the breach." *McKesson Co.,* 58 N.Y.2d at 506.  Plaintiffs do not allege that Baldwin was a "substantial factor" in bringing about their alleged harm.  *Komatsu v. City of N.Y.*, 2021 U.S. Dist. LEXIS 132991, at *30 (S.D.N.Y. July 16, 2021) (Ramos, J.).  Although Plaintiffs allege Baldwin "invited 2.4 million people to attack, threaten, and shame the McCollum family" (Am. Compl. ¶¶ 55, 60, 72, 77, 103, 108), this claim belies the actual words Baldwin used, which must control the Court's analysis: he never asked any person, explicitly or implicitly, to take any action.  (*Id.*, Ex. A at 3-5.)  In fact, he told the commenters to *stop* making offensive comments.  (*Id.* ¶ 35, Ex. A at 4-5, 8.)  All Plaintiffs allege, if anything, is that their harm at the hands of third parties was "consequential," which falls *far short* of the required "direct result" standard.  *Diaz v. Little Remedies Co., Inc*., 81 A.D.3d 1419, 1419 (App. Div. 4th Dept. 2011) (plaintiff could not recover for emotional damages resulting from tangential consequence of defendant's alleged action).

*Finally*, since "the factual allegations underlying" this claim "are virtually identical to the facts underlying [Plaintiffs'] defamation claim," it is duplicative and cannot proceed on that basis." *Hengjun Chao v. Mount Sinai Hosp.,* 476 F. App'x 892, 895 (2d Cir. 2012).  Accordingly, all negligence claims should be dismissed.

III.   **PLAINTIFFS FAIL TO STATE CLAIMS FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

As a threshold matter, Plaintiffs have not stated a claim because "a claim for intentional infliction of emotional distress fails where it falls within the ambit of another tort." *See Rivers v. Towers, Perrin, Forster & Crosby Inc*., 2009 WL 817852, at *9 (E.D.N.Y. Mar. 27, 2009) (dismissing claim for intentional infliction of emotional distress because it overlapped with defamation claim); *Fordham v. Islip Union Free Sch. Dist*., 662 F. Supp. 2d 261, 276 (E.D.N.Y. 2009) (same).   (Am. Compl. ¶¶ 57-61, 74-78, 105-109.)  Courts in this circuit routinely dismiss intentional infliction of emotional distress claims where plaintiffs give no facts beyond those necessary to sustain a defamation claim.  *See e.g., M+J Savitt, Inc. v. Savitt*, No. 08 Civ. 8535 (DLC), 2009 WL 691278, at *14 (S.D.N.Y. Mar. 17, 2009) (dismissing intentional infliction claim in part because the statement on which it was based fell within the ambit of plaintiff's claim for defamation);  *Anyanwu v. Columbia Broad. Sys., Inc*., 887 F. Supp. 690, 693 (S.D.N.Y. June 15, 1995) (dismissing intentional infliction claim because a separate cause of action "for what are essentially defamation claims" should not be entertained);  *Green v. Hinds*, No. 17CV5422DRHARL, 2019 WL 624929, at *6 (E.D.N.Y. Feb. 14, 2019) (plaintiff did not "plead any facts beyond those necessary to sustain his claims for defamation").  That is the case here.

Moreover, the allegedly defamatory statements do not rise to the level of "extreme and outrageous conduct" required by New York law.  *Id.*  The standard for this tort has been "set deliberately high to ensure that a plaintiff's claim of emotional distress is genuine and to dissuade litigation where only bad manners and hurt feelings are involved."  *Thai v. Cayre Grp.*, 726 F.Supp. 2d 323, 336-37 (S.D.N.Y. July 8, 2010); *see also Ostrowsky v. Dep't of Educ*., 2013 WL 5963137, at *11 (E.D.N.Y. Nov. 7, 2013) (dismissing complaint in its entirety in part because defamatory statements are not sufficiently extreme to support a claim of intentional infliction).  Furthermore,

"wherever a defendant's actions can be seen, at least in part, as having been motivated by the desire to express some opinion, [this] cause of action . . . will fail." *McKenzie v. Dow Jones & Co., Inc.*, 355 F. App'x 533, 536 (2d Cir. 2009).

## CONCLUSION

The Court should grant Baldwin's motion to dismiss in its entirety, with prejudice.

Dated:  November 30, 2022                Respectfully submitted,

QUINN EMANUEL URQUHART & SULLIVAN, LLP

BY:    */s/ Luke Nikas*
          Luke Nikas
          51 Madison Avenue, 22nd Floor
          New York, NY 10010
          (212) 849-7000
          lukenikas@quinnemanuel.com

          *Attorneys for Defendant Alexander R. Baldwin III*

23