**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **JIENNAH MCCOLLUM, ROICE JOLEEN MCCOLLUM, AND CHEYENNE MCCOLLUM,**<br><br>    **Plaintiffs,**<br><br>- against -<br><br>**ALEC BALDWIN**<br><br>                **Defendant.** | **Case No. 1:22-cv-07328-ER** |

## <u>MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' RESPONSE TO DEFENDANT ALEXANDER R. BALDWIN III'S MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT</u>

Plaintiffs JIENNAH MCCOLLUM, ROICE JOLEEN MCCOLLUM, and CHEYENNE MCCOLLUM (collectively, "Plaintiffs"), by and through the undersigned counsel, hereby file their collective Response in Opposition to Defendant's Motion to Dismiss (Doc. 14) filed by Defendant Alexander R. Baldwin III ("Defendant" or "Baldwin") pursuant to Federal Rules of Civil Procedure and would respectfully show the Court as follows:

Dated:  December 21, 2022

**THE CASAS LAW FIRM, P.C.**

3801 North Capital of Texas Highway,
Suite E240, #445
Austin, Texas 78746
(512) 806-7699 Office
(855) 220-9626 Fax
Email:  dennis@talentrights.law


            */s/ Dennis C. Postiglione*
_____
Dennis C. Postiglione (pro hac vice)
Texas State Bar No. 24041711


            */s/ Joseph N. Casas*
_____
Joseph N. Casas (pro hac vice forthcoming)
Email:  joseph@talentrights.law
California State Bar No.  225800
Illinois State Bar No. 6274674

**ATTORNEYS FOR PLAINTIFFS**

and


**THE CASAS LAW FIRM, P.C.**


            */s/ John V. Golaszewski*
_____
John V. Golaszewski, Esq.
1745 Broadway, 17th Floor
New York, New York
T: 855.267.4457
F: 855.220.9626
Email:  john@talentrights.law

*Attorneys for Plaintiffs Jiennah McCollum,*
*Roice Joleen McCollum, and Cheyenne McCollum*

## TABLE OF CONTENTS

I.       SUMMARY OF ARGUMENT………………………………………………....1

II.      LEGAL STANDARDS & ARGUMENTS…………………………………………..1

         A. Standard Under Rule 12(b)(6)……………………………………………...2

         B.       Plaintiff ROICE MCCOLLUM States Claims for Defamation, Defamation Per Se, and Defamation by Implication……………………………………………………3

         C.       Baldwin's "private conversations" with Roice were published by Baldwin………..9

         D.       Baldwin's Alternate Dismissal Reasons are not Proper Under FED R. CIV. P. 12(b)(6)………………………………………………………………………9

         E.       Plaintiffs State Claims for Negligence, Negligent Infliction of Emotional Distress and Gross Negligence………………………………………………………...12

         F.       Plaintiffs State Claims for Intentional Infliction of Emotional Distress…………...14

         G.       Plaintiffs Allege Damages Caused by Baldwin…………………………………...16

III.     CONCLUSION AND PRAYER……………………………………………………18

# TABLE OF AUTHORITIES

**Cases**

*Anonymous*, 60 N.Y. 262, 264 (1875)……………………………………………………...5

*Anson v. United States*, 294 F. Supp. 3d 144, 162 (W.D.N.Y. 2018)………………………...13

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)……………………………………………2, 9, 19

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)…………………………………2, 9, 18

*BMW of North America, Inc. v. Gore*, 517 U.S. 559, 116 S.Ct. 1589, 134 L.Ed.2d 809 (1996)…………………………………………………………………………...…17, 18

*Bonner v. Guccione,* 916 F.Supp. 271, 276 (S.D.N.Y.1996)……………………………...15

*Bouveng v. NYG Capital LLC*, 175 F. Supp.3d 280, 344 (S.D.N.Y. 2016)………………………..17

*Bradley v. Consolidated Edison Co. of New York, Inc.,* 657 F.Supp. 197, 205 (S.D.N.Y.1987)…..15

*Brooker v. Coffin*, 5 Johns 188 (1809)……………………………………………………...5

*Bryant v. State*, 23 A.D.3d 592, 636; 805 N.Y.S.2d 634 (2005)…………………………………13

*Capital Solutions, LLC v. Konica Minolta Bus. Solutions U.S.A., Inc*., Nos. 08–2027, 08–2191, 2009 WL 1635894, at *8 (D.Kan. June 11, 2009)……………………………………………...17

*Chambers v. Time Warner, Inc.,* 282 F.3d 147, 152–153 (2d Cir.2002)……………………………4

*Church of Scientology Int'l v. Behar*, 238 F.3d 168, 174 (2d Cir. 2001)………………………………10

*Di Ponzio v. Riordan,* 89 N.Y.2d 578, 583, 657 N.Y.S.2d 377, 679 N.E.2d 616)……...…………12

*Dworkin v. L.F.P., Inc.*, 839 P.2d 903, 914 (Wyo. 1992)……………………………………..10

*Erickson v. Pardus*, 551 U.S. 89, 94 (2007)…………………………………………..…7

*Eves v. Ray,* 42 A.D.3d 481, 840 N.Y.S.2d 105, 106–07 (2d Dep't 2007)………………………...15

*Goldman v. Belden*, 754 F.2d 1059, 1067 (2d Cir. 1985)……………………………2, 8, 18

*Gulfstream Media Group, Inc. v. PD Strategic Media, Inc.*, No. 12-62056-CIV, 2013 WL 1891281, at *3 (S.D. Fla. May 6, 2013)………………………………………………………………7

*Gurtler v. Union Parts Mfg. Co.*, 285 A.D. 643, 644 (App. Div. 1st Dept. 1955)………………..…5

*Heard v. City of New York*, 82 N.Y.2d 66, 72, 603 N.Y.S.2d 414, 623 N.E.2d 541 (1993)………..13

*Henneberry v. Sumitomo Corp. of Am.,* 2005 WL 991772, at *15 (S.D.N.Y. Apr. 27, 2005)……....8

*Immuno AG v. Moor-Jankowski*, 567 N.E.2d 1270, 1278 (1991)……………………………………..6

*Jackson v. Gannon-Jackson*, 72 Misc.3d 1223(A) (N.Y. Sup. Ct. 2021)…………………………..3

*Jaghory v. N.Y. State Dep't of Educ.,* 131 F.3d 326, 329 (2d Cir.1997)……………...2, 9, 12, 19

*Kloner v. United States*, 196 F. Supp.3d 375, 386 (E.D.N.Y. 2016)……………………………..13

*Koster v. Chase Manhattan Bank, N.A.,* 609 F.Supp. 1191, 1197–98 (S.D.N.Y.1985)………....15

*LeBlanc v. Skinner*, 103 A.D.3d 202, 955 N.Y.S.2d 391 (2012)…………………………....5

*Lee v. Edwards*, 101 F.3d 805, 809 (2d Cir. 1996)…………………………………………..18

*Liberman v. Gelstein*, 605 N.E.2d 344, 347 (1992)……………………………………....5

*Mangiafico v. Blumenthal,* 471 F.3d 391, 398 (2d Cir.2006)………………………………....4

*Martin v. Citibank, N.A.,* 762 F.2d 212, 220 (2d Cir.1985)………………………………..15

*McCarthy v. Dun & Bradstreet Corp.,* 482 F.3d 184, 191 (2d Cir. 2007)……………...2, 8, 18

*McDougal v. Fox News Network, LLC*, 489 F. Supp. 3d 174, 185 (S.D.N.Y. 2020)……………...10

*McGowan v. Hulick*, 612 F.3d 636, 637 (7th Cir. 2010)…………………………………………..17

*Melehes v. Wilson*, 774 P.2d 573, 579 (Wyo.1989)…………………………………………..18

*Mr. Chow of New York v. Ste Jour Azue S.A.*, 759 F.2d 219, 224 (2d Cir. 1985)……………….....9

*Neufeld v. Neufeld,* 910 F.Supp. 977, 984 (S.D.N.Y.1996)………………………………………..15

*Privitera v. Phelps*, 79 A.D.2d 1, 3 (App. Div. 4th Dept. 1981)……………………………..4, 5

*Sanchez v. State of New York*, 99 N.Y.2d 247, 784 N.E.2d 675 (2002)…………………………....12

*Spence v. Maryland Cas. Co.,* 995 F.2d 1147, 1158 (2d Cir.1993)……………………………..15

*Stuto v. Fleishman,* 164 F.3d 820, 828 (2d Cir.1999)…………………………………………..15

*Tavarez v. Lelakis*, 143 F.3d 744, 747 (2d Cir. 1998)…………………………………………..13

*Thai v. Cayre Group, Ltd*., 726 F. Supp. 2d 323, 334-5 (S.D.N.Y. 2010)…………………………12

*Warnaco, Inc. v. VF Corp.*, 844 F.Supp. 940, 945 (S.D.N.Y. 1994)………………………...2, 9, 19

*White v. Fraternal Order of Police,* 909 F.2d 512, 518 (D.C.Cir.1990)……………………………4

**Statutes**

18 U.S. Code § 2383……………………………………………………………………………..3, 4, 7

FED R. CIV. P. 12(b)(6)……………………………………………………………...3, 7, 9, 11, 14

FED R. CIV. P. 56(a)…………………………………………………………………………..1, 3

FED. R. CIV. P. 8……………………………………………………………………………18

FED. R. CIV. P. 9(g)……………………………………………………………………….16

**Other Authority**

5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1311 at 354–55 (3d ed.2004)………………………………………………………………………………………17, 18

Restatement (Second) of Torts § 46…………………………………………………………....14

Rodney A. Smolla, *Law of Defamation* § 4.05[1] at 4–18 (2d ed.1999)…………………………....4

# I.
## SUMMARY OF ARGUMENT

1.      Defendant is correct that this matter is not about the heroism of Lance Corporal Rylee McCollum or his family's sacrifice (Doc. 14, p. 1).  Rather, this case is about an incredibly wealthy, incredibly famous man who used his fame, notoriety, and platform of 2.4 million Instagram followers to attack the grieving widow and sisters of a deceased United States Marine who now seeks to avoid responsibility for the harm he inflicted.   Mr. Baldwin's publication of false allegations and continued participation in the social media exchanges at issue in this case do not constitute "political opinions."  Rather, they were deeply troublesome and harmful persona – false – attacks that opened a door to threats and further false allegations against this Gold Star Family causing a huge disruption in their lives and their emotional well-being that to this day has not been closed.  Plaintiffs are not public figures or limited public figures for purposes of Defendant's conduct.  Rather, they are private citizens who were thrown to BALDWIN's pack of wolves. BALDWIN engaged in multiple acts beyond his publication and each of those acts constitutes a separate and distinct tort which damaged Plaintiffs.

2.      Plaintiffs' Federal and state law claims should not be dismissed because the First Amended Complaint (Doc. 13) articulates a plausible case for each cause of action with sufficient detail as required under the Federal Rules of Civil Procedure.  All of Plaintiffs' claims are properly plead and are timely.  Moreover, Plaintiffs' First Amended Complaint meets the standard required under Federal Rule of Civil Procedure 12(b)(6), the proper test at this point in the case.  Defendants repeatedly attempt to apply a premature and improper FED R. CIV. P. 56(a) summary judgment standard to Plaintiffs' allegations.  Defendant's motion should be denied.

# II.
## LEGAL STANDARDS & ARGUMENTS

**A. Standard Under Rule 12(b)(6).**

3.      In deciding a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept all allegations in the complaint as true and draw all reasonable inferences in Plaintiffs favor. *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007). The Court's function on a motion to dismiss is "not to weigh the evidence that might be presented at a trial but merely to determine whether the complaint itself is legally sufficient." *Goldman v. Belden*, 754 F.2d 1059, 1067 (2d Cir. 1985). The Court should not dismiss a complaint if a plaintiff has stated "enough facts to state a claim to relief that is plausible on its face," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)), and "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *See also, Warnaco, Inc. v. VF Corp.*, 844 F.Supp. 940, 945 (S.D.N.Y. 1994) ("A court may not dismiss a complaint unless the movant demonstrates beyond doubt that the plaintiff can prove no set of facts in support of his claims which would entitle him to relief." (Internal quotations and citations omitted).  The Court must construe Plaintiffs' complaint liberally to determine whether Plaintiffs could prove no set of facts that would entitle them to relief on their claims. *Jaghory v. N.Y. State Dep't of Educ.,* 131 F.3d 326, 329 (2d Cir.1997).

4.      Plaintiffs' First Amended Complaint is detailed, fact specific, and organized by clear headings and individual counts and Defendant can intelligibly frame a response and defense to each count. (See Doc. 13, First Amended *Complaint*).  The issue is whether the First Amended Complaint contains sufficient facts to allow Defendant to intelligibly answer, and in this case, Defendant can absolutely respond to the Plaintiffs' allegations.  Moreover, the First Amended Complaint is supported by the exhibits obtained from Defendant's own social media posts. (Doc.

13, Exhibit A).   As such, Plaintiffs have satisfied the pleading requirement of fair notice. Defendant's Motion recites the FED R. CIV. P. 12(b)(6) standard.  Cognizant of this, and as set forth below, Defendants have strained to apply a FED R. CIV. P. 56(a) summary judgment standard to Plaintiffs' allegations.  As Plaintiffs' have met their pleading burden under FED R. CIV. P. 12(b)(6), dismissal is improper.

**B.    Plaintiff ROICE MCCOLLUM States Claims for Defamation, Defamation Per Se, and Defamation by Implication**

5.    Under New York law, statements classified as defamatory per se are those "(i) charging plaintiff with a serious crime; (ii) that tend to injure another in his or her trade, business or profession; (iii) that plaintiff has a loathsome disease; or (iv) imputing unchastity to a woman." *Jackson v. Gannon-Jackson*, 72 Misc.3d 1223(A) (N.Y. Sup. Ct. 2021). Plaintiffs have alleged that Defendant's publication constitutes a representation that Plaintiffs were "January 6 rioters," "insurrectionists," and "participated in the insurrection." Plaintiffs' pleading alleges that BALDWIN's statement that ROICE is an "insurrectionist" imputes a criminal offense; namely, participation in a rebellion and uprising against the United States Government. (Doc. 13, <u>Exhibit A</u>, p. 4).  This offense under 18 U.S. Code § 2383 carries a fine, prison sentence of not more than 10 years, or both, and precludes any person guilty of the offense from holding any office under the United States.  This crime is regarded in public opinion as involving moral turpitude; that is inherent baseness or vileness of principle in the human heart and shameful wickedness and such an extreme a departure from ordinary standards of honesty, good morals, justice or ethics as to be shocking to the moral sense of the community.  Indeed, since the notorious January 6 incident, several individuals have been indicted and convicted, while others still face prosecution. BALDWIN'S statement is defamatory on its face and, therefore, actionable without proof of special damages. (Doc. 13, ¶¶ 97).

6.      Also, as evidenced by his followers' responses to Baldwin's publication (attached to the First Amended Complaint as Exhibit A), the implication in this false statement is that Plaintiffs are rioters, traitors, racists, Nazis, or white supremacists who sought to overthrow the United States democracy.  They are accused of being "terrorists" who "made a mockery of [LCPL McCollum's] sacrifice." (Doc. 13, Exhibit A, p. 9, 10, 12-21, 36).  A 'complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference.' " (*Mangiafico v. Blumenthal,* 471 F.3d 391, 398 (2d Cir.2006) (quoting *Chambers v. Time Warner, Inc.,* 282 F.3d 147, 152–153 (2d Cir.2002)).

7.      In a defamation by implication action, "[a] defamation by implication stems not from what is literally stated, but from what is implied." *White v. Fraternal Order of Police,* 909 F.2d 512, 518 (D.C.Cir.1990).  "Words that appear to convey a defamatory meaning may be explained away as innocuous when their context is made clear. Conversely, words innocent on their face may, when explained in context, convey a defamatory meaning." Rodney A. Smolla, *Law of Defamation* § 4.05[1] at 4–18 (2d ed.1999).   It is this analysis that is at work in Plaintiffs' allegations. (*See, e.g*., Doc. 13, ¶¶ 91-99; *see also* Doc. 13, Exhibit A, p. 9, 10, 12-21).  Baldwin's words clearly impute to them criminal offenses under 18 U.S. Code § 2383. (Doc. 13*,* ¶¶ 27, 82, 89.)   Baldwin then goes out of his way to define the specific conduct.  He stated privately and then reposted:

> **Baldwin:  I don't think so.  _Your activiti_es resulted in the unlawful destruction of government property, the death of a law enforcement officer, an assault on the certification of the presidential election.  I reposted your photo.  Good luck.**

(Doc. 13, ¶¶ 26-30; Doc. 13, Exhibit A, pp. 2-3) (emphasis added).

8.      Baldwin's comments, both in a vacuum and, more importantly, in context are clearly "words charging [Roice] with a crime [that impute to Roice] the commission of an indictable offense upon conviction of which punishment may be inflicted." *Privitera v. Phelps*, 79 A.D.2d 1,

3 (App. Div. 4th Dept. 1981) (citing *Anonymous*, 60 N.Y. 262, 264 (1875) and *Brooker v. Coffin*, 5 Johns 188 (1809); *see also Liberman v. Gelstein*, 605 N.E.2d 344, 347 (1992) (qualifying *Privitera* to require that the statements charge plaintiff with a serious crime to be actionable as slander per se).   Here, Baldwin's comments did just that – he accused ROICE of engaging in *serious* crimes, not merely belonging to a "group" of insurrectionists.

9.      BALDWIN's allegations of series crimes by ROICE could not be clearer. While Defendant is correct that it is not enough that the words suggest membership or allegiance with a criminal group because "[p]eople are indicted for what they do, not for their associations or beliefs, and membership in an organization, even membership in an organization having a criminal purpose, is not an indictable offense."   *Privitera* 79 A.D.2d at 4 (accusations of being part of the Mafia did not rise to an indictable offense); *see also Gurtler v. Union Parts Mfg. Co.*, 285 A.D. 643, 644 (App. Div. 1st Dept. 1955) (charge that plaintiff was a Communist).   However, Defendant's reliance on this line of cases is misguided and clearly distinguishable from what BALDWIN did in this matter.   BALDWIN did not merely publish that ROICE was part of a "group" of insurrectionists; he published that ROICE's "activities" "resulted" in the "unlawful destruction of government property" and "the death of a law enforcement officer." Put another way, BALDWIN made it clear ROICE *took part in* serious criminal behavior.   Plaintiffs submit this issue should be decided by a jury, and not disposed of via a motion to dismiss.

10.      Moreover, BALDWIN's assertions were not "an expression of opinion . . . likely to be perceived as rhetorical hyperbole." *LeBlanc v. Skinner*, 103 A.D.3d 202, 955 N.Y.S.2d 391 (2012). Rather, Plaintiffs allege in the First Amended Complaint that the very specific ("your activities") characterization of ROICE as an "insurrectionist" has a very specific meaning defined by BALDWIN himself that tracks the language of the criminal statute. (Doc. 13, ¶¶ 22, 26, 27, 29,

94, 97).  He literally lists the crimes he alleges. (*Id.*).  Moreover, the responses to BALDWIN's allegations are evidence that his loyal followers, in fact, took BALDWIN's words literally. (Doc. 13, ¶¶ 27, 29, 32, 34-36; *see generally*, Doc. 13, Exhibit A).  Those responses are part of Plaintiffs' First Amended Complaint. (*Id.*)   The fact that "virtually every major news organization in America" expressed what BALDWIN characterizes as an "identical" sentiment to his post is not relevant to a Motion to Dismiss and the First Amended Complaint contradicts it. (Doc. 15, p. 12). BALDWIN's point is a red herring.

11.     Exhibit A to the Complaint clearly establishes that BALDWIN's followers literally believed his assertion that ROICE had *participated in* the rioting that resulted in the death of a Capitol Police officer and the destruction of government property. (*See, e.g.*, Doc. 13, Exhibit A, p. 16, "you're going to jail for your participation in an insurrection on the US Government"). Moreover, the Court does not need to wonder about the context of BALDWIN's overall communication and the circumstances of his comments.  Exhibit A is direct evidence of how those comments were taken and perceived in context. (*See Immuno AG v. Moor-Jankowski*, 567 N.E.2d 1270, 1278 (1991).  It was not ROICE's initial publication of the image to her 180 followers that caused the "controversy;" rather, it was BALWDWIN's republication of it with his "insurrectionist" comments that caused the harm alleged.  BALDWIN admits as much in his Motion. (Doc. 15, p. 19 (referring to Baldwin's 'amplification' of the image).

12.     In his Motion to Dismiss, BALDWIN attempts to parse the meaning of the word "insurrectionist" claiming he is "not a lawyer" and therefore could not possibly have used the word as a slur against ROICE. (Doc. 15, p. 11-12).  He goes on to sight multiple news articles using the term "insurrection" debating the term. (*Id.*).  This smoke and mirror tactic is disingenuous. BALDWIN knew *exactly* what he meant when he made the allegation to his 2.4 million followers. He stated:

> ***Your activities*** **resulted in the unlawful destruction of government property, the death of a law enforcement officer, an assault on the certification of the presidential election.  I reposted your photo.  Good luck.**

(Doc. 13, <u>Exhibit A</u>, p. 2)(emphasis added).

13.     Under FED R. CIV. P. 12(b)(6) a court can only consider what is contained within the four corners of the complaint—it must "limit its consideration to the pleadings and exhibits attached to the pleadings and, . . . accept the plaintiff's allegations as true and evaluate all plausible inferences from those facts in favor of the plaintiff."  *Gulfstream Media Group, Inc. v. PD Strategic Media, Inc.*, No. 12-62056-CIV, 2013 WL 1891281, at *3 (S.D. Fla. May 6, 2013).  *See also Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *McGowan v. Hulick*, 612 F.3d 636, 637 (7th Cir. 2010).  Baldwin's attempts to reframe the allegations with legal disclaimers, articles, and dictionary definitions is not relevant for purposes of this Court's analysis.  Plaintiffs have pled facts supporting their claims and dismissal is not a proper remedy at this point.  If BALDWIN wants to establish his alleged victimization, he should do it at the appropriate time.

14.     Plaintiffs allege that BALDWIN's "insurrectionist" allegation imputes a criminal offense; namely, participation in a rebellion and uprising against the United States Government. (Doc. 13 ¶¶ 21; 26; 36; 81; Doc. 13, Exhibit A, p. 8).  This offense under 18 U.S. Code § 2383 carries a fine, prison sentence of not more than 10 years, or both, and precludes any person guilty of the offense from holding any office under the United States. (*Id at* ¶ 85)*.*  This crime is regarded in public opinion as involving moral turpitude; that is inherent baseness or vileness of principle in the human heart and shameful wickedness and such an extreme a departure from ordinary standards of honesty, good morals, justice or ethics as to be shocking to the moral sense of the community. *Id.*  Plaintiffs also alleged that Baldwin's publication would tend to injure them in their trades, businesses, and professions. (*Id. at* ¶ 91).

7

15.     When a defamation claim is challenged on a motion to dismiss, the court should determine whether the statements at issue are "reasonably susceptible of a defamatory connotation." *Henneberry v. Sumitomo Corp. of Am.,* 2005 WL 991772, at *15 (S.D.N.Y. Apr. 27, 2005) (citations omitted).  If the Court deems the statements to be reasonably susceptible to a defamatory interpretation, then "it becomes the jury's function to say whether that was the sense in which the words were likely to be understood by the average and ordinary" listener. Further, because the Court accepts plaintiff's allegations as true, it assumes that defendants' statements are false and that the defendants were culpable in making the statements.  In interpreting allegedly defamatory statements, the Court must view the statements in context as the literal meaning of the words does not always coincide with their meaning in a grander setting. The statement in question should not be viewed in isolation, but instead should be interpreted in light of the "whole apparent scope and intent" of the statements. Finally, if the statement in question is reasonably susceptible to more than one interpretation, one of which is not defamatory, 'it is then for the trier of fact, not for the court acting on the issue solely as a matter of law, to determine in what sense the words were used and understood." (*Id.* at 275).  Applying this standard, the Court can easily see that BALDWIN's words were in fact interpreted by his followers as proof of "insurrection" and a desire to overthrow the government. (*see generally*, Doc. 13, Exhibit A, 1-22).

16.     Finally, BALDWIN's motion argues under a standard of review and attempts to apply a summary judgment standard.  However, in deciding a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept all allegations in the complaint as true and draw all reasonable inferences in Plaintiffs favor. *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007). The Court's function on a motion to dismiss is "not to weigh the evidence that might be presented at a trial but merely to determine whether the complaint itself is legally sufficient." *Goldman v. Belden*,

754 F.2d 1059, 1067 (2d Cir. 1985). The Court should not dismiss a complaint if a plaintiff has stated "enough facts to state a claim to relief that is plausible on its face," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)), and "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *See also Warnaco, Inc. v. VF Corp.*, 844 F.Supp. 940, 945 (S.D.N.Y. 1994) Plaintiffs have satisfied their pleading burden on this cause of action and dismissal is improper.

**C.    Baldwin's "private conversations" with Roice were published by Baldwin**

17.    It is true that the First Amended Complaint refers to BALDWIN's "private" messages with Roice McCollum (Doc. 13, ¶¶ 21-22, 26, 29). However, the First Amended Complaint also alleges, and Exhibit A supports the fact that BALDWIN published these messages to his 2.4 million followers on Instagram. (*Id.* at ¶¶ 2, 26, 29, 30, 32, 41, 46, 55, 56, 60, 63, 72, 73, 77, 78, 80, 88, 94, 103, 108, 109.); Doc. 13, Exhibit A, p. 1-22). Under FED R. CIV. P. 12(b)(6), the Court must construe Plaintiffs' First Amended Complaint liberally to determine whether Plaintiffs could prove no set of facts that would entitle them to relief on their claims. *Jaghory v. N.Y. State Dep't of Educ.,* 131 F.3d 326, 329 (2d Cir.1997). Under this standard, Plaintiffs have satisfied their pleading burden and dismissal is improper.

**D.    Baldwin's Alternate Dismissal Reasons are not Proper Under FED R. CIV. P. 12(b)(6)**

18.    BALDWIN's statements are alleged to be defamatory in that they specifically accuse ROICE of criminal activity in which she took no part. (Doc. 13, Exhibit A, p. 8). The term "insurrectionist" as Baldwin used it is not a matter of opinion according to the Complaint. No "ordinary reader would see, [BALDWIN's statements] constitute his protected opinion on a matter of public concern. (*Mr. Chow of New York v. Ste Jour Azue S.A.*, 759 F.2d 219, 224 (2d Cir. 1985).

Moreover, ROICE's attendance and alleged criminal activity at the January 6th demonstration is the matter upon which BALDWIN was commenting, not on the riots in general or the prosecution of a group of individuals.  Rather, BALDWIN directly names ROICE as a person responsible for specific treasonous activity.  In other words, even if we grant BALDWIN his broad interpretation of the term "insurrection" he was still well aware that ROICE was not a rioter when he published his statement.  BALDWIN invented the fact that ROICE engaged in "unlawful destruction of government property, the death of a law enforcement officer, an assault on the certification of the presidential election." (Doc. 13, Exhibit A, p. 2).  That statement is a measured, specific allegation of multiple criminal acts falling under a specific federal criminal statute specifically naming ROICE as the person whose "activities resulted" in those consequences.  Plaintiffs allege that BALDWIN was commenting not on the January 6th riot, but *specifically* on Roice McCollum's alleged criminal conduct at that event---activities she never took part in and are therefore defamatory. (Doc. 13, ¶¶ 26, 30, 85).   BALDWIN cannot simply expand the scope of his attack on ROICE and now claim that he was expressing his political opinion to include all activity that occurred at the Capitol on January 6.  He was not.  He had absolutely no way of knowing what ROICE actually did at the Capitol grounds on January 6 when he recklessly accused her of federal crimes.  Moreover, Roice McCollum's personal activities are not a matter of public concern and BALDWIN's words are actionable because they do not constitute his protected opinion. (See, e.g., *Dworkin v. L.F.P., Inc.*, 839 P.2d 903, 914 (Wyo. 1992)).  What Baldwin said was patently untrue and he was informed by ROICE that it was untrue before he posted it anyway. (Doc. 13, Exhibit A, p. 2).  In other words, BALWDWIN in fact knew what he was publishing was false and "there is sufficient evidence to permit the conclusion that the [BALDWIN] in fact entertained serious doubts as to the truth of his publication") *Church of Scientology Int'l v. Behar*, 238 F.3d 168, 174 (2d Cir. 2001) (quotation omitted); *McDougal v. Fox News Network, LLC*, 489 F. Supp. 3d 174, 185 (S.D.N.Y.

10

2020).  BALDWIN knew his publication was false and intended the harm he caused. (Doc. 13, ¶ 81-87).

19.     Moreover, all Plaintiffs have stated that they are private figures who never voluntarily injected themselves into any public controversy. (Doc. 13, ¶¶ 5, 80).  The "controversy" at issue here is not the January 6 capital riot which took place over a year before BALDWIN's post; rather, it is the firestorm created by BALDWIN's post and his characterization of ROICE as an insurrectionist itself.  Moreover, Plaintiffs pled that BALDWIN acted with actual malice when he made the accusations. (*Id*. at ¶¶ 81, 87).

20.     Defendant also incorrectly argues that "[p]laintiffs cannot assert a defamation claim in these circumstances, because the alleged defamatory 'sting' arises from substantially true facts, the plaintiff may not rely on minor or irrelevant inaccuracies to state a claim for libel. (Doc. 15, p. 20) Defendant attempts to obscure the issue by stating that "the 'sting' of the publication is from ROICE's own photograph and celebration of January 6 . . . not Baldwin's related 'opinion'." *Id.*

21.     Again, this is nothing more than an attempt to mischaracterize Plaintiffs' allegations and an improper application of the Fed R. Civ. P. 12(b)(6) standard.  The 'sting' alleged here is neither the January 6th riots nor ROICE's initial innocuous publication of the Washington Monument picture to her 180 followers.  It is *Baldwin's re-publication and subsequent incitement* to his 2.4 million followers along with the allegation that the ROICE engaged in treasonous criminal conduct that led to the death of a law enforcement officer.  It is BALDWIN's continued participation in the message chain wherein he continues to make false allegations against them. (Doc. 13, ¶¶ 79-92; Doc, 13, Exhibit A, 1-22).  ROICE did not Dismissal is not warranted as Plaintiffs have met their pleading burden.

11

**E.    Plaintiffs State Claims for Negligence, Negligent Infliction of Emotional Distress and Gross Negligence**

22.    The existence and scope of an alleged tortfeasor's duty is a legal question to be determined by the court in the first instance *see Sanchez v. State of New York*, 99 N.Y.2d 247, 784 N.E.2d 675 (2002), 784 N.E.2d 675; *Di Ponzio v. Riordan,* 89 N.Y.2d 578, 583, 657 N.Y.S.2d 377, 679 N.E.2d 616).  In making such a determination, courts look to whether the relationship of the parties is such as to give rise to a duty of care, whether the plaintiff was within the zone of foreseeable harm, and whether the accident was reasonably foreseeable (*Id.*).

23.    As stated above, this is not a summary judgment motion.  Under a 12(b)(6) standard the Court must construe Plaintiffs' First Amended Complaint liberally to determine whether Plaintiffs could prove no set of facts that would entitle them to relief on their claims. (*Jaghory v. N.Y. State Dep't of Educ.,* 131 F.3d 326, 329 (2d Cir.1997)).   Plaintiffs allege that Defendant was negligent in his postings on his Instagram feed, by posting allegations that ROICE was "an insurrectionist" and "participated in the insurrection." (Doc. 13, 33, 35; Doc 13, Exhibit A, 9-14, 19-20).  Again, BALDWIN tries to mischaracterize his initial allegation in his Motion to Dismiss by expanding the specific meaning of his attack on ROICE to cover all conduct at the Capitol on January 6. (Doc. 15, p. 20).  Defendant incorporates this logic into his assertion that he had no duty to Plaintiffs.  In this matter, unlike the others cited by Defendant, BALDWIN's statement was "of and concerning" specifically ROICE, not some general crowd entering the Capitol Building. (*See Thai v. Cayre Group, Ltd*., 726 F. Supp. 2d 323, 334-5 (S.D.N.Y. 2010).   BALDWIN can cite as many news articles as he wants; however, until he cites one calling ROICE an insurrectionist he cannot hide behind the word's arguably broader meaning in the context of January 6.

24.    New York tort law does "recognize[ ] an 'assumed duty' theory of liability," which provides that a defendant who "voluntarily assumes a duty to act with reasonable care toward

others" is liable "if the plaintiff relied on the defendant's undertaking and if the defendant's act or

failure to act placed the plaintiff in a more vulnerable position than if the obligation had not been

assumed." *Anson v. United States*, 294 F. Supp. 3d 144, 162 (W.D.N.Y. 2018) (collecting

cases); *see also Kloner v. United States*, 196 F. Supp. 3d 375, 386 (E.D.N.Y. 2016) ("An assumed

duty arises 'only where (1) the failure to exercise due care increases the risk of harm to the plaintiff

or (2) the harm is suffered because of the plaintiff's reliance on the undertaking.'" (quoting *Tavarez*

*v. Lelakis*, 143 F.3d 744, 747 (2d Cir. 1998))).  "Once a duty is voluntarily undertaken, it must be

performed with due care." *Bryant v. State*, 23 A.D.3d 592, 636; 805 N.Y.S.2d 634 (2005). "In

determining whether a cause of action lies in such instances, the query always is whether the

putative wrongdoer has advanced [some action] to such a point as to have launched a force or

instrument of harm, or has stopped [such action] where inaction is at most a refusal to become an

instrument of good." *Heard v. City of New York*, 82 N.Y.2d 66, 72, 603 N.Y.S.2d 414, 623 N.E.2d

541 (1993) (internal quotation marks and citation omitted).  Here, Plaintiffs allege that had a duty

to refrain from conduct that would cause injury to Plaintiffs.  (Doc. 13, ¶¶ 46, 63, 94).  Moreover,

they allege that Baldwin further assumed a duty of care when he chose to communicate with all

2.4 million of his followers concerning the Plaintiffs. (*Id.*)  Plaintiffs further allege that BALDWIN

violated that duty by failing to check his facts prior to leveling his allegations and giving his

followers implicit instructions to shame and attack Plaintiffs. (*Id.*)

25.      Plaintiffs continue by stating that the social media onslaught of hatred and bile that ensued

was entirely foreseeable to BALDWIN and any reasonably careful person under similar or the

same circumstances would have anticipated the mental anguish and suffering and the physical

manifestation of that mental pain that would result in his conduct.  (Doc 13, ¶¶ 48, 64, 65, 96, 97).

Those violations were the proximate cause of the harm Plaintiffs suffered. (*Id.*)  Plaintiffs' First

13

Amended Complaint also gives a specific example of BALDWIN's and his wife's voluntary withdrawal from social media when he and his wife were attacked because she pretended to be Spanish and another when he attacked actress Gillian Anderson online. (Doc 13, ¶¶ 23-26).  The McCollum Plaintiffs were viciously attacked by BALDWIN and his followers just 4 months after their husband, brother, and hero was killed by a terrorist.  In short, BALDWIN not only knew what the consequences of his actions would be, he directly experienced them himself prior to this incident.  Foreseeability is a foregone conclusion and is evident in BALDWIN's "Good Luck" comment. (Doc. 13, ¶ 21; Doc. 13, Exhibit A, p. 2).

26.     Plaintiffs further plead that BALDWIN's conduct constitutes a conscious and voluntary disregard of the need to use reasonable care, which was highly likely to cause foreseeable grave injury or harm to Plaintiffs. (*Id.* at ¶¶ 47, 48, 49, 64, 65, 66, 96, 97).   In short, Plaintiffs plead that BALDWIN acted recklessly in spite of knowing the consequences of his actions, that his conduct is extreme when compared to ordinary negligence standards. *Id.*  These allegations are not mere recitations of conclusory statements.  They point to specific conduct by BALDWIN that establishes a negligence and gross negligence, and negligent infliction of emotional distress including causation of damages, in their pleading under FED R. CIV. P. 12(b)(6) standards.  Plaintiffs will concede that they have not plead that BALDWIN's conduct was a "substantial factor" in bringing about their harm.  Indeed, Plaintiff allege that his conduct was THE factor. (Doc 13, ¶¶ 51, 68, 99).

**F.     Plaintiffs State Claims for Intentional Infliction of Emotional Distress**

27.     The New York courts have adopted the rule set out in the Restatement that "[o]ne who by extreme and outrageous conduct that intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress ..." Comment d to [the Restatement (Second) of Torts § 46] provides that "[l]iability has been found only where the conduct has been

14

so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable."... Defendants' conduct "must consist of more than mere insults, indignities and annoyances and must be so shocking and outrageous as to exceed all reasonable bounds of decency." *Bradley v. Consolidated Edison Co. of New York, Inc.,* 657 F.Supp. 197, 205 (S.D.N.Y.1987) (citing New York cases); *see also, e.g., Spence v. Maryland Cas. Co.,* 995 F.2d 1147, 1158 (2d Cir.1993); *Martin v. Citibank, N.A.,* 762 F.2d 212, 220 (2d Cir.1985); *Bonner v. Guccione,* 916 F.Supp. 271, 276 (S.D.N.Y.1996); *Neufeld v. Neufeld,* 910 F.Supp. 977, 984 (S.D.N.Y.1996); *Koster v. Chase Manhattan Bank, N.A.,* 609 F.Supp. 1191, 1197–98 (S.D.N.Y.1985). Courts have sustained claims of intentional infliction of emotional distress where the claims "involved some combination of public humiliation, false accusations of criminal or heinous conduct, verbal abuse or harassment, physical threats, permanent loss of employment, or conduct contrary to public policy." *Stuto v. Fleishman,* 164 F.3d 820, 828 (2d Cir.1999); *see also Eves v. Ray,* 42 A.D.3d 481, 840 N.Y.S.2d 105, 106–07 (2d Dep't 2007).

28.     First of all, BALDWIN's argument that all Intentional Infliction causes of action should be dismissed because they fall within the ambit of defamation is not applicable to Plaintiffs CHEYENNE and JIENNAH, as neither has asserted a claim for defamation in the First Amended Complaint. (*See generally*, Doc. 13). BALDWIN unleashed a hateful mob of his followers upon them just 4 months after they lost their brother and husband to a terrorist attack in Afghanistan. The level of hatred and vitriol BALDWIN knew they would experience as a direct result of his posting ROICE's photograph rises to the requisite level under New York law to support their claims. (see e.g., Doc. 13, Exhibit A, p. 3-22)(death threats, being called Nazis, racists, and saying LCPL McCollum got what he deserved).

29.     Second, ROICE's claim, stems from BALDWIN's publication of a defamatory statement but also alleges additional conduct that would allow her Intentional Infliction claims to stand on their own. (*See, e.g.,* Doc. 13, ¶¶ 94, 96, 102).  Plaintiffs allege that BALDWIN's conduct caused his most rabid followers to attack a grieving family only months after their brother, husband, and father was killed.  Moreover, ROICE alleges that BALDWIN's subsequent conduct and continued participation in the Instagram thread caused her damages. (*Id.* at 96).  In other words, ROICE asserts multiple claims and multiple actions by BALDWIN separate and apart from his initial defamatory statement that caused her harm.  As such, this case is distinguishable from the cases cited by Defendant to support this reason for dismissal wherein the defamatory statement is the only bad act.

30.     All Plaintiffs allege each and every element of an Intentional Infliction of Emotional Distress and point to the conduct by BALDWIN that caused Plaintiffs to suffer damages. (Doc 13, ¶¶ 57-61, 74-78, 105-109).  The allegations articulate behavior and consequences from that behavior that clearly rise to more than mere insults or annoyances.  To argue that the vitriolic, hateful filth spewed by BALDWIN's followers in response to BALDWIN's repeated attempts to foster the social media conversation fail to meet the outrageous conduct threshold is simply disingenuous.  BALDWIN can not assert that Plaintiffs have no facts supporting a defamantion cause of action and then turn arou nd and hide behind that cause of action in order to dismiss the Intentional Infliction claims.  Plaintiffs have plead facts sufficient to meet their burden under this cause of action.

**G.     Plaintiffs Allege Damages Caused by Baldwin**

31.     FED. R. CIV. P. 9(g) governs the pleading of special damages in diversity cases.  As it has been determined to address punitive damages FED. R. CIV. P. 9(g) requires the pleading party to

"at a minimum, allege the circumstances upon which the punitive damages claim is made." *Id.* (quoting *Capital Solutions, LLC v. Konica Minolta Bus. Solutions U.S.A., Inc*., Nos. 08–2027, 08–2191, 2009 WL 1635894, at *8 (D.Kan. June 11, 2009)). "This is a relatively liberal standard, with 'most courts now taking the position that allegations of special damage will be deemed sufficient for the purpose of Rule 9(g) if they are definite enough to enable the opposing party to prepare his or her responsive pleading and a defense to the claim.'" *Id*. (quoting 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1311 at 354–55 (3d ed.2004)).

32.    In this matter, Plaintiffs have alleged special, general, and punitive damages stemming from BALDWIN's conduct.  (Doc. 13, ¶¶ 3, 44, 51, 68, 92, 99, 111).  In addition, Plaintiffs have also alleged that they have been injured in their "trades, businesses, and professions" as a result of Baldwin's conduct. (*Id.* at ¶ 91).  Moreover, ROICE has alleged Defamation Per Se and has met her pleading burden regarding BALDWIN's requisite intent and malice.  As such, special damages are not required to maintain that claims.  Neither CHEYENNE nor JIENNAH have alleged defamation of any kind in the First Amended Petition.

33.    "Regarding the magnitude of punitive damage awards, due process requires that they be reasonable in their amount and rational in light of their purpose to punish what has occurred and to deter its repetition." *Bouveng v. NYG Capital LLC*, 175 F. Supp.3d 280, 344 (S.D.N.Y. 2016) (internal quotation marks and citations omitted). In determining whether a punitive damage award is excessive, courts must consider the three "guideposts" established by the Supreme Court in *BMW of North America, Inc. v. Gore*, 517 U.S. 559, 116 S.Ct. 1589, 134 L.Ed.2d 809 (1996), namely "(1) the degree of reprehensibility of the tortious conduct; (2) the ratio of punitive damage to compensatory damages; and (3) the difference between this remedy and the

civil penalties authorized or imposed in comparable cases." *Lee v. Edwards*, 101 F.3d 805, 809 (2d Cir. 1996) (citing *Gore*, 517 U.S. at 575, 116 S. Ct. at 1589-99). As stated in *Gore*, "perhaps the most important indicium of the reasonableness of a punitive damage award is the degree of reprehensibility of the defendant's conduct." 517 U.S. at 575, 116 S. Ct. at 1599 (1996). A court must "keep in mind the purpose of punitive damages:  to punish the defendant and to deter him and others from similar conduct in the future." *Lee*, 101 F.3d at 809 (internal quotation marks and citation omitted).

34.     The pleadings meet the liberal standard to state a claim for relief under the Federal Rules. (See FED. R. CIV. P. 8, 9(g), 12).  In addition, the pleadings are "definite enough to enable BALDWIN to prepare his responsive pleading and a defense to the claim." 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1311 at 354–55 (3d ed.2004)). Special damages do not need to state a sum certain. W.R.C.P. 9(g); *Melehes v. Wilson*, 774 P.2d 573, 579 (Wyo.1989).

### III.
### CONCLUSION AND PRAYER

35.     Pursuant to Rule 12(b)(6), the Court must accept all allegations in the complaint as true and draw all reasonable inferences in Plaintiffs' favor. *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007). The Court's function on a motion to dismiss is "not to weigh the evidence that might be presented at a trial but merely to determine whether the complaint itself is legally sufficient." *Goldman v. Belden*, 754 F.2d 1059, 1067 (2d Cir. 1985).

36.     The Court should not dismiss Plaintiffs' First Amended Complaint in this matter because Plaintiffs have stated "enough facts to state a claim[s] to relief that is [are] plausible on its [their] face[s]," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)), Plaintiffs' claims have facial because Plaintiffs plead factual content that allows this Court to draw the reasonable inference that

the defendant is liable for the misconduct alleged.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009);

*See also Warnaco, Inc. v. VF Corp*., 844 F.Supp. 940, 945 (S.D.N.Y. 1994) BALDWIN has failed

to demonstrate beyond doubt that the Plaintiffs can prove no set of facts in support of their claims

which would entitle them to relief.  The Court must construe Plaintiffs' First Amended liberally to

determine whether Plaintiffs could prove no set of facts that would entitle them to relief on their

claims. *Jaghory v. N.Y. State Dep't of Educ.,* 131 F.3d 326, 329 (2d Cir.1997).  As Plaintiffs have

met their burden Rule 12(b)(6), they pray that this Court DENY Defendant's Motion to Dismiss

and for any futher relief to which they have shown themselves entitled.

19

## <u>CERTIFICATE OF SERVICE</u>

   I hereby certify that on December 21, 2022, I filed through the United States District Court, for the Southern District of New York's CM/ECF System the foregoing document, causing it to be served by electronic means on all counsel of record and by email as follows:

Luke Nikas
Partner
Quinn Emanuel Urquhart & Sullivan, LLP
51 Madison Avenue, 22nd Floor
New York, NY 10010
212-849-7228 Direct
212-849-7000 Main Office Number
212-849-7100 FAX
<u>lukenikas@quinnemanuel.com</u>

**ATTORNEY FOR DEFENDANT**

*/s/Dennis C. Postiglione*

_____
Dennis C. Postiglione

20