UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JIENNAH MCCOLLUM, ROICE JOLEEN
MCCOLLUM, *and* CHEYENNE MCCOLLUM,

Plaintiffs,

– *against* –

ALEC BALDWIN,

Defendant.

**OPINION & ORDER**

22-cv-7328 (ER)

RAMOS, D.J.:

Jiennah McCollum, Roice Joleen McCollum, and Cheyenne McCollum, bring this

diversity action alleging defamation and tort claims against Alec Baldwin.  Specifically,

Plaintiffs allege defamation, defamation *per se*, and defamation by implication;

negligence and gross negligence; negligent infliction of emotional distress; and

intentional infliction of emotional distress.  Doc. 13.

Before the Court is Baldwin's motion to dismiss all claims set forth in the first

amended complaint ("FAC") for failure to state a claim under Federal Rule of Civil

Procedure Rule 12(b)(6).  Doc. 14.  For the reasons set forth below, the motion is

GRANTED.

## I.    BACKGROUND

### A. Factual Background[1]

Jiennah McCollum is the widow of Marine Lance Corporal Rylee J. McCollum,

who was killed in an attack by a suicide bomber on August 26, 2021, in Kabul,

---

[1] The following facts are drawn from the FAC, which the Court accepts as true for the purposes of the
instant motion.  *See, e.g.*, *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012).  When considering
a motion to dismiss for failure to state a claim, the Court may consider documents attached to the complaint
as exhibits, as well as documents incorporated by reference in the complaint.  *DiFolco v. MSNBC Cable*

Afghanistan.[2]  Doc. 13 ¶ 1.  One month after Rylee died in Kabul, Jiennah[3] gave birth to their daughter.  *Id.* ¶ 1.  Rylee is also survived by his father, Jim, and two sisters, Roice and Cheyenne.  *Id.* ¶¶ 9–10.  Roice appeared on the Fox News program "The Story with Martha MacCallum" in early 2022 to discuss Rylee's death.[4]  Doc. 15 at 14, 24.

Alec Baldwin is a famous actor who resides in New York.  *Id.* ¶¶ 2, 11.  A well-known celebrity, Baldwin has 2.4 million followers on Instagram, where he has been socially and politically active for years.  *Id.* ¶ 14.  After Rylee's death, a GoFundMe

---

*L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010) (citing *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002)).

[2] Shortly thereafter, on August 29, 2021, the Washington Post published an article in which the McCollums spoke about Rylee's death and made several statements about President Joe Biden.  *See* Sean Sullivan, Dan Lamonthe, Kareem Fahim & Haq Nawaz Khan, *Biden Meets with Families of Service Members Killed in Kabul as U.S. Races to Exit Afghanistan*, Wash. Post (Aug. 29, 2021), *available at* https://www.washingtonpost.com/politics/biden-meets-with-families-of-service-members-killed-in-kabul-as-us-races-to-exit-afghanistan/2021/08/29/c185ed78-08ca-11ec-aea1-42a8138f132a  story html.  Specifically, the article quotes Roice McCollum, who stated that Biden acted in "total disregard to the loss of our Marine" and sounded scripted and shallow.  *Id.*  Roice further stated that "You can't f--- up as bad as [Biden] did and say you're sorry," adding that "every life is on his hands."  *Id.*  The McCollums also spoke to Fox News about Rylee's death and President Biden's reaction on August 31, 2021.  *See* Nikolas Lanum, *Sister of Wyoming Marine Killed in Kabul Says Biden's Apology Looked 'Fake and Scripted'*, Fox News (Aug. 31, 2021), *available at* https://www foxnews.com/media/marine-rylee-mccollum-family-biden-scripted-kabul.  In the Fox News article, Cheyenne McCollum called Biden's apology "fake" and "scripted," and she added that "there was not an ounce of sympathy looking at his face."  *Id.*

These articles were included in Baldwin's opening brief.  *E.g.*, Doc. 15 at 24 n.14.  The Court takes judicial notice of the articles pursuant to Federal Rule of Evidence 201(b) and (c).  Indeed, the existence of the McCollums' statements within these articles is not subject to reasonable dispute because it can be readily confirmed within the listed sources, whose accuracy cannot be reasonably questioned.  *See Christa McAuliffe Intermediate Sch. PTO, Inc. v. De Blasio*, 364 F. Supp. 3d 253, 261–62 (S.D.N.Y.), *aff'd*, 788 F. App'x 84 (2d Cir. 2019).  In their opposition, Plaintiffs argue that the Court may only consider "what is contained within the four corners of the complaint;" however, this contention in this regard pertains to Baldwin's citations to dictionary definitions and articles regarding the word "insurrection."  Doc. 16 at 12–13.  Besides stating that they "never voluntarily injected themselves into any public controversy," the Plaintiffs did not otherwise contest Baldwin's references to their appearances on these news platforms.  *See* Doc. 16 at 17.

[3] For clarity, the Court refers to the individual members of the McCollum family by their first names.

[4] The video clip showing the interview, which aired on January 20, 2022, is available at https://m facebook.com/watch/?v=316303503845547&_rdr.  The Court also takes judicial notice of the statements asserted within the video and published by Fox News, though not for their truth.  *See* Fed. R. Evid. 201(b) and (c); *Glob. Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 157 (2d Cir. 2006) (noting that judicial notice may be taken of matters asserted, though not for their truth).

account started fundraising for Jiennah and her soon-to-be-born daughter.  *Id.* ¶ 20.
Baldwin donated $5,000 to Jiennah in support of the soldier's family.  *Id.*

On January 6, 2021, Roice went to Washington, D.C. to participate in the
demonstration to protest the election of President Joe Biden, which later escalated into a
riot in the Capitol Building.  *Id.* ¶¶ 18–19.  However, she did not take part in the riot:  she
neither entered the Capitol Building nor engaged in any confrontation with police officers
or government officials.[5]  *Id.* ¶ 19.  Roice was later interviewed by the FBI about the
demonstration and was cleared of any wrongdoing.  *Id.*  Jiennah and Cheyenne were not
present in Washington, D.C. on January 6, 2021.  *Id.*

On January 3, 2022, Baldwin saw a photo of a crowd of demonstrators at the
Washington Monument posted by Roice on her Instagram page in anticipation of the one-
year anniversary of her attendance at the Washington, D.C. demonstration.  *Id.* ¶ 20.
Baldwin then commented on Roice's post "Are you the same woman that I sent the $ to
for your sister's husband who was killed during the Afghanistan exit?"  *Id.*; Doc. 13-1 at
2.  Upon confirmation from Roice that she was the sister of Rylee and the sister-in-law of
Jiennah, Baldwin engaged in an exchange of private messages with Roice on Instagram.
Doc. 13 ¶¶ 21–22.  The final private messages between Baldwin and Roice state as
follows:

> Baldwin:  When I sent the $ for your late brother, out of real respect for
> his service to this country, I didn't know you were a January 6th rioter.

---

[5] The complaint specifically states, in relevant part, that "[w]hile she was present at the demonstration,
[Roice] did not take part in, nor did she support or condone the rioting that erupted.  During the rioting, she
was stuck in place outside the Capitol Building next to multiple police officers for hours after the rioting
began due to the fact that so many people were around her and the area had been locked down.  She did not
enter any government building, was not involved in any confrontation with any police officers or
government officials, and did not destroy any property."  Doc. 13 ¶ 19.

Roice:  Protesting is perfectly legal in the country and I've already had my sit down with the FBI.  Thanks, have a nice day!

Baldwin:  I don't think so.  Your activities resulted in the unlawful destruction of government property, the death of a law enforcement officer, an assault on the certification of the presidential election.  I reposted your photo, Good luck.

*Id.*

After engaging in the private conversation with Roice, Baldwin published a public post on Instagram, which was available to his followers, regarding the protest and riot at the Capitol.  Doc. 13 ¶ 29.  Baldwin included a photo of Roice[6] and wrote the following in the caption of the post:

I will take this down tomorrow.  Lots of Trumpsters chiming in here with the current cry that the attack on the Capitol was a protest, (a more peaceful form of which got a lot of other protestors imprisoned) and an exercise in democracy.

That's bullshit.

The party that has reflexively rallied on behalf of Law enforcement-Support the Troops-Jesus watched the Capitol police get beaten, one killed, and called it their right.

I've said it before.  The Republican that can lead the GOP away from this maniac [Trump] will go down in history as a hero.

There's an interesting story here…

So, I read in The Times, I believe, the story about the soldiers that died at the Kabul airport.

I did some research.

I found, on [Instagram], that this woman [Roice McCollum] is the brother [sic] of one of the men who was killed.  I offered to send her sister-in-law [Jiennah McCollum] some $ as a tribute to her late brother, his widow and their child.

---

[6] The photo that Baldwin included is the same one that Roice posted in commemoration of the one-year anniversary of the January 6th demonstration.  Doc. 13-1 at 2.

Which I did.  As a tribute to a fallen soldier.

Then I find this.

Truth is stranger than fiction.

*Id.* (emphasis omitted); Doc. 13-1 at 3.

In response to Baldwin's post, several of his followers sent Roice a number of hateful messages.  Doc. 13 ¶ 32.  One of these private messages to Roice reads:  "Get raped and die, worthless cunt [] Your brother got what he deserved."  *Id.* ¶ 34; Doc. 13-1 at 6.  Roice then took a screenshot of this private message and posted it in on her Instagram page with the caption:  "Thanks for the follow Alec.[]"  Doc. 13-1 at 5.  Baldwin responded to the hateful message directed at Roice under her post:  "I find that abhorrent[.]  My feelings were expressed by my gesture on behalf of your brother."  *Id.*  Baldwin's following comment under this post reads:

alecbaldwininsta:  @roice_wyogirl that is not true.  There are hateful things posted toward you that are wrong.  Irony was my point.  The irony of sincerely wanting to honor your brother and the fact that you are an insurrectionist.  Irony:  "the use of words that mean the opposite of what you really think especially in order to be funny[.]" (Merriam Webster)

Doc. 13-1 at 4.

In addition, Baldwin engaged in some discussions with others regarding the McCollums in the comments under Roice's post:

exdemocrat313:  So you're saying you would deny a dead man's family help due to your political view??????  People like you is why I lost all faith in Democrats. []

alecbaldwininsta:  @exdemocrat313 but I didn't say that. I gratefully supported the gofundme campaign while simultaneously not knowing the woman I approached is an insurrectionist. I think that's … remarkable.

> fateisabluebird : @exdemocrat313 shut up.  [Baldwin] has no obligation
> to send his money to anyone in the first place—to find out he sent money to
> someone who holds responsibility for the death of others would be gutting.
> She doesn't deserve his kindness.

Doc. 13-1 at 8.

Baldwin's followers eventually directed their efforts against all Plaintiffs.  Roice,

Cheyenne and Jiennah began receiving more insulting and disturbing comments,

dishonoring Rylee and accusing them of being, among other things, white supremacists

and Nazis.  Below are examples of the comments sent to Plaintiffs:

> falteringlyhuman:  @chi_wyomom22 fact: your sister has 2 recent posts
> flashing the white supremacy hand sign, that's all I need to declare her
> garbage [] we fought a war against people that think like this, I for one am
> ready for Round 2 of nazi-punching []

> momdiariesandsunflowers:  @alecbaldwininsta I can't believe this.  She is
> proud of destroying our country ? Did I miss something here? My goodness
> []

> trish_whring:  @chi_wyomom22 this isn't about him for me.  It's about her
> actions, involvement and motives being involved in the insurrection. [ . . . ]

> woke.business:  @roice_wyogirl you are white supremacy.

> bellafoxjr:  @roice_wyogirl YOU SAY THIS ABOUT @alecbaldwininsta
> AND YET YOU WERE SO QUICK TO TAKE MONEY FROM HIM?  IS
> THAT HOW IT WENT DOWN?  IF IT IS, YOU'RE DISGUSTING, AND
> YOU ARE ARE [sic] ERASING YOUR BROTHER'S LEGACY.

> bellafoxjr:  @chi_wyomom22 Is your whole family the same?  Were they
> all insurrectionists?  Do they all preach hate against @alecbaldwininsta?

> sem919mes:  @roice_wyogirl you're going to jail for your participation in
> an insurrection on the US Government. []

> ibellai :  @chi_wyomom22 let's say someone died at war and left their
> wife and child alone.  People would donate so they can get by with a little
> more help but then you find out they partake in ISIS.  You wouldn't feel
> right helping and giving money to ISIS, right?

> alexhspina:  @jane.vick.jaidi Someone losing a sibling is not an excuse to
> be an a\*\*hole traitor nor does it give her special status over other
> Americans.  Trying to overthrow the government has consequences.

Doc. 13 ¶ 38; Doc. 13-1 at 9, 12–19.

Plaintiffs assert that Baldwin's posts were made with malicious intent, as evidenced by the fact that he wished Roice "good luck" when he told her that he re-posted her photo.  *Id.* ¶ 42.  Baldwin, they contend, failed to correct his false statement that Roice was an insurrectionist, despite the fact that he was specifically told that Roice did not participate in the riot.[7]  *Id.* ¶ 40.  Plaintiffs further allege that Baldwin, as a politically active celebrity with 2.4 million followers, acted negligently and recklessly as he knew or should have known that his comments on Instagram would result in the hateful speech being directed towards Jiennah, Roice, and Cheyenne.  Doc. 13 ¶ 41.

Each of the Plaintiffs raises the following claims against Baldwin:  (1) negligence and gross negligence; (2) negligent infliction of emotional distress; and (3) intentional infliction of emotional distress.  In addition, Roice alleges defamation, defamation per se, and defamation by implication.  Plaintiffs seek $25 million in compensatory and punitive damages.  Doc. 13.

---

[7] The record shows that before Baldwin referred to Roice as an insurrectionist in an Instagram comment, she had told him that "Protesting is perfectly legal in the country[,] and I've already had my sit down with the FBI" in response to his assertion that she was "a January 6th rioter."  Doc. 13 ¶ 22.  Contrary to Plaintiffs' suggestion, however, this neither made Baldwin's comment untrue, nor does it now show that Baldwin "in fact knew what he was publishing was false."  Doc. 16 at 16.  Indeed, as Plaintiffs also point out, Baldwin had "no way of knowing" the details of "what R[oice] actually did at the Capital grounds on January 6" when he re-posted the photo and subsequently made several comments about the conduct.  *Id.* But even so, when he published his post, Baldwin *did* know that Roice was "at the Capitol grounds on January 6" and that she was a member of a "Make America Great Again" group that "surround[ed]" the Washington Monument.  *Id.*; *see also* Doc. 13 ¶ 20.  And as Baldwin notes, the term "insurrection" was widely used in this context by news organizations.  Doc. 17 at 10 n.4.

### B. Procedural History

Plaintiffs filed this action on August 26, 2022.[8]  Doc. 1.  The Court held a pre-motion conference on October 19, 2022, where it granted Plaintiffs leave to file an amended complaint and set a briefing schedule for the instant motion.  Min. Entry dated Oct. 19, 2022.  Plaintiffs filed the FAC on November 9, 2022.  Doc. 13.  On November 30, 2022, Baldwin moved to dismiss the FAC for failure to state a claim under Federal Rule of Civil Procedure Rule 12(b)(6).  Doc. 14.  Briefing was completed on January 4, 2023.  Doc. 17.

## II.   LEGAL STANDARD

When ruling on a motion to dismiss under Rule 12(b)(6), the Court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor.  *Nielson v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014).  The Court is not required to credit "mere conclusory statements" or "[t]hreadbare recitals of the elements of a cause of action."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'"  *Id*. at 678 (quoting *Twombly*, 550 U.S. at 570).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id*. (citing *Twombly*,

---

[8] This case was originally filed in the U.S. District Court for the District of Wyoming on January 17, 2022. Doc. 15 at 14; *see also McCollum et al. v. Baldwin*, No. 22-cv-00008 (NDF).  As set forth above, just a few days after the case was filed, Roice appeared on a Fox News segment with her counsel.  *Alec Baldwin sued for $25M by family of Marine killed in Afghanistan*, Fox News (Jan. 20, 2022), https://m facebook.com /watch/?v=316303503845547&  rdr.  The District of Wyoming dismissed the complaint for lack of personal jurisdiction on May 4, 2022, *McCollum et al. v. Baldwin*, No. 22-cv-00008 (NDF), Doc. 21, and Plaintiffs subsequently refiled the case in this Court, *see* Doc. 15 at 14.

550 U.S. 556).  The plaintiff must allege sufficient facts to show "more than a sheer possibility that a defendant has acted unlawfully."  *Id*.  If the plaintiff has not "nudged [her] claims across the line from conceivable to plausible, [the] complaint must be dismissed."  *Twombly,* 550 U.S. at 570; *see Iqbal*, 556 U.S. at 680.

The question in a Rule 12 motion "is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims."  *Sikhs for Justice v. Nath*, 893 F. Supp. 2d 598, 615 (S.D.N.Y. 2012) (quoting *Villager Pond, Inc. v. Town of Darien*, 56 F.3d 375, 378 (2d Cir. 1995)).  "[T]he purpose of Federal Rule of Civil Procedure 12(b)(6) 'is to test, in a streamlined fashion, the formal sufficiency of the plaintiff's statement of a claim for relief without resolving a contest regarding its substantive merits'" or "weigh[ing] the evidence that might be offered to support it."  *Halebian v. Berv*, 644 F.3d 122, 130 (2d Cir. 2011) (quoting *Global Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 155 (2d Cir. 2006)).

## III.   DISCUSSION

### A.  Defamation, Defamation *Per Se*, and Defamation by Implication

Only Roice alleges defamation against Baldwin.  Doc. 13 ¶¶ 79–92.  "Defamation is the injury to one's reputation either by written expression, which is libel, or by oral expression, which is slander."  *Biro v. Conde Nast*, 883 F. Supp. 2d 441, 456 (S.D.N.Y. 2012) (internal quotation marks omitted).  To successfully allege defamation under New York law, the following elements must be met:  "(1) a written defamatory statement of and concerning the plaintiff, (2) publication to a third party, (3) fault, (4) falsity of the defamatory statement, and (5) special damages or *per se* actionability."  *Palin v. New York Times Co.*, 940 F.3d 804, 809 (2d Cir. 2019).  The following statements

are *per se* defamatory:  statements "(i) charging plaintiff with a serious crime; (ii) that

tend to injure another in his or her trade, business or profession; (iii) that plaintiff has a

loathsome disease; or (iv) imputing unchastity to a woman."  *Liberman v. Gelstein*, 80

N.Y.2d 429, 435 (1992); *see also Zherka v. Amicone*, 634 F.3d 642, 645 n.6 (2d Cir.

2011).

However, the First Amendment protects free expression of opinions.  U.S. Const.

Amend. 1.  "A public figure plaintiff," or a limited public figure plaintiff, "must prove

that an allegedly libelous statement was made with actual malice, that is, made with

knowledge that it was false or with reckless disregard of whether it was false or not."

*Palin*, 940 F.3d at 809 (internal quotation marks omitted); *see also Gottwald v. Sebert*,

Nos. 32  & 33, 2023 WL 3959051, at *1 (June 13, 2023) ("We hold that [plaintiff] is a

limited public figure who must prove by clear and convincing evidence that [the

defendant] acted with actual malice.").

Finally, under New York law, plaintiffs may bring a claim for defamation by

implication, which "involves 'false suggestions, impressions and implications arising

from otherwise truthful statements.'"  *Levin v. McPhee*, 119 F.3d 189, 196 n.5 (2d Cir.

1997) (quoting *Armstrong v. Simon & Schuster, Inc.*, 85 N.Y.2d 373, 381–82 (1995)).

"To survive a motion to dismiss a claim for defamation by implication [under New York

law] ... the plaintiff must make a rigorous showing that the language of the

communication as a whole can be reasonably read both to impart a defamatory inference

and to affirmatively suggest that the author intended or endorsed that inference."

*Kavanagh v. Zwilling*, 578 F. App'x 24, 24–25 (2d Cir. 2014) (summary order) (quoting

*Stepanov v. Dow Jones & Co.*, 987 N.Y.S.2d 37, 44 (1st Dep't 2014)) (alteration in original).

### 1. *Private Messages Are Not Actionable under the Defamation Claims*

Roice alleges that Baldwin's posts constitute a representation that she was a "January 6 rioter" and "insurrectionist," and that Baldwin "define[d]" the term "insurrectionist for his 2.4 million followers." Doc. 16 ¶ 5; Doc. 13 ¶ 27 (referencing private message in which Baldwin stated to Roice that her "activities resulted in the unlawful destruction of government property, the death of a law enforcement officer, an assault on the certification of the presidential election"). In response, Baldwin emphasizes that Baldwin's reference to Roice as a "January 6 rioter," and his contention that her "activities resulted in" several unlawful consequences, took place completely within their private communications. Doc. 15 at 16.

The Court agrees that the messages exchanged between Baldwin and Roice via direct messaging are not actionable to support defamation claims because Baldwin did not publish those messages to any third party.[9] *See Palin*, 940 F.3d at 809. Indeed, publication to a third party is the cornerstone of defamation. *See id.*; *see also Richards v. Security Resources*, 133 N.Y.S.3d 12, 14 (1st Dep't 2020) ("Plaintiff's defamation claim fails because plaintiff fails to allege one allegedly defamatory statement was published to a third-party, an essential element of a defamation claim."). Accordingly, Plaintiffs'

---

[9] In their opposition to Baldwin's motion to dismiss, Plaintiffs assert that Baldwin "published these messages to his 2.4 million followers on Instagram." Doc. 16 at 15. In support of that contention, Plaintiffs cited to a number of paragraphs in the FAC. *Id.* As Baldwin underscores, however, "nowhere do the exhibits show that Baldwin published those private messages. To the contrary, they show the *opposite*— that Baldwin's private messages to Roice were not made public." Doc. 17 at 7–8. Importantly, as Baldwin also notes, when documentary evidence contradicts the allegations set out in the complaint, the documents control. *Bailey v. New York Law School*, No. 16 Civ. 4283 (ER), 2017 WL 6611582, at *7 (S.D.N.Y. Dec. 27, 2017) *aff'd*, No. 1903473, 2021 WL 5500078 (2d Cir. Nov. 24, 2021).

defamation claims that are based on Baldwin's private communications with Roice—
where Baldwin referred her as a "January 6 rioter" whose activities resulted in unlawful
consequences—are not actionable.  The allegations as to those claims are thus dismissed.

### 2.  *Baldwin's Public Comments Are Protected under the First Amendment*

Baldwin made two comments that were available to the public under Roice's
Instagram posts where he referred Roice as an "insurrectionist."  Doc. 13-1 at 4, 8.  Roice
argues that she is a private figure and Baldwin knowingly and publicly made false
statements that Roice was an "insurrectionist" in his comments.  Doc. 13 ¶ 80.  Baldwin,
however, contends that Roice is a limited public figure and she failed to plead that
Baldwin acted with actual malice.[10]  Doc. 15 at 23.

A limited public figure under New York law is an individual who has
"successfully invited public attention to h[er] views in an effort to influence others prior
to the incident that is the subject of litigation," "voluntarily injected [her]self into a public
controversy related to the subject of the litigation," and "maintained regular and
continuing access to the media."  *Barbash v. STX Fin., Ltd. Liab. Co.*, No. 20-cv-123,
2020 WL 6586155, at *5 (S.D.N.Y. Nov. 10, 2020) (quoting *Lerman v. Flynt Distrib. Co.*,
745 F.2d 123, 136–37 (2d Cir. 1984)).  As set forth above, to state a defamation claim
where the declarant is a limited public figure, Roice is required to adequately plead actual
malice:  "that is, [] knowledge that the statements were false or with reckless disregard as

---

[10] Baldwin also argues that his "language merely implied that Roice was at the January 6 protests, which she admitted."  Doc. 15 at 18.  He adds that "it is readily apparent that Baldwin, who is not a lawyer or an expert on the U.S. Code, loosely used the word 'insurrection' to convey its plain dictionary meaning:  'an act or instance of revolting against civil authority or an established government.'"  *Id.* at 18–19.  In other words, the "plain meaning" of the statement merely expresses his opinion "that the January 6 events . . . constituted an act of revolt against our civil government."  *Id.* at 19.  As noted above, Baldwin underscores that numerous news organizations referred to the January 6 events in this manner.  *Id.* at 19 n.10.

to their falsity." *Biro v. Condé Nast*, 807 F.3d 541, 544 (2d Cir. 2015); *Masson v. New Yorker Magazine*, 501 U.S. 496, 499 (1991) (noting that actual malice is "a term of art denoting deliberate or reckless falsification").

The Court agrees that Roice is a limited public figure with respect to this dispute. Roice posted the January 6 demonstration photo publicly on Instagram, with a caption that expressed her political views as a participant, in anticipation of the demonstration's one-year anniversary, and she voluntarily engaged in conversations with Baldwin—a well-known celebrity. Doc. 13 ¶¶ 18, 20–21. Furthermore, as set forth above, Roice voluntarily injected herself into the public realm by appearing on several news sites in the aftermath of her brother's death and before this action was filed. *See, e.g.*, Sean Sullivan, Dan Lamonthe, Kareem Fahim & Haq Nawaz Khan, *Biden Meets with Families of Service Members Killed in Kabul as U.S. Races to Exit Afghanistan*, Wash. Post (Aug. 29, 2021), *available at* https://www.washingtonpost.com/politics/biden-meets-with-families-of-service-members-killed-in-kabul-as-us-races-to-exitafghanistan/2021/08/29/c185ed78-08ca-11ec-aea1-42a8138f132a_story.html; Nikolas Lanum, *Sister of Wyoming Marine Killed in Kabul Says Biden's Apology Looked 'Fake and Scripted'*, Fox News (Aug. 31, 2021), *available at* https://www.foxnews.com/media/marine-rylee-mccollum-family-biden-scripted-kabul.  Roice also "maintained regular and continuing access" to Instagram throughout the period of this controversy and appeared on a Fox News segment with her counsel shortly after the case was originally filed in the District of Wyoming.  *Alec Baldwin sued for $25M by family of Marine killed in Afghanistan*, Fox News (Jan. 20, 2022), *available at* https://m.facebook.com/watch/?v=316303503845547&_rdr.  Thus, because Roice is a limited public figure with respect to

the controversy, her defamation claims must be dismissed unless she adequately pleads that Baldwin made the comments with actual malice.

Here, the Court agrees with Baldwin that Roice did not sufficiently plead actual malice and that his comments are protected under the First Amendment. While Plaintiffs claim that "[Baldwin] knew, or should have known, that [publishing potentially false comments] would result in an avalanche of violently negative attacks on Plaintiffs," Doc. 13 ¶ 87, this allegedly negligent conduct does not meet the threshold of actual malice. *See e.g.*, *Masson v. New Yorker Mag., Inc.*, 501 U.S. 496, 510 (1991) (noting that defendant's "[m]ere negligence does not suffice" to plead actual malice). Instead, the question here is whether Plaintiffs' allegations sufficiently assert that Baldwin personally *believed* his statements were false. *See Jacob v. Lorenz*, 626 F. Supp. 3d 672, 692 (S.D.N.Y. 2022) (Ramos, J.) ("[T]he critical question is the state of mind of those responsible for the publication.") (citation omitted); *McDougal v. Fox News Network, LLC*, 489 F.Supp.3d 174, 185 (S.D.N.Y. 2020) ("personal biases do not establish actual malice without additional facts" showing "knowledge" or belief of falsity). However, as noted above, Plaintiffs' allegations do not support their proposition that Baldwin knew or believed his comments referring to Roice as an "insurrectionist" were false when he posted them. To the contrary, their allegation—"[Baldwin] posted what he believed was [Roice's] image on her Instagram feed to his 2.4 million followers and continued labelling [Roice] an 'insurrectionist'"—suggests that Baldwin posted what he believed was true. Doc. 13 ¶ 81. Thus, Plaintiffs do not sufficiently plead that Baldwin intentionally posted false and defamatory statement with actual malice.

Accordingly, Baldwin's comments are protected, and the defamation claims based on these comments are dismissed.

### 3. *Baldwin's Post Re-Publishing Roice's January 6 Photo Is Not Defamatory*

According to Roice, Baldwin's "re-publication [Roice's photo] and subsequent incitement to his 2.4 million followers" amounts to defamation.  Doc. 16 at 17 (emphasis omitted).  In response, Baldwin asserts that "[p]laintiffs' own allegations and exhibits demonstrate that Baldwin did not accuse them of committing a crime," his statements "constitute protected opinion," and the defamation allegations otherwise fail because they fail to allege actual malice.  Doc. 17 at 9, 10, 13.

A defamatory statement is one that "exposes an individual to public hatred, shame, obloquy, contumely, odium, contempt, ridicule, aversion, ostracism, degradation, or disgrace, or induces an evil opinion of one in the minds of right-thinking persons, and deprives one of confidence and friendly intercourse in society." *Lorenz*, 626 F. Supp. 3d 672 at 690.

None of the words in Baldwin's original post concerning Roice satisfy the above definition.  Baldwin wrote in the post that:

> I read in The Times, I believe, the story about the soldiers that died at the Kabul airport.  I did some research.  I found, on IG [Instagram], that this woman is the [sister] of one of the men who was killed.  I offered to send her sister-in-law some $ as a tribute to her late brother, his widow and their child.  Which I did.  As a tribute to a fallen soldier.  Then I find this. Truth is stranger than fiction.

Doc. 13-1 at 3.  Courts have held that a statement is viewed as an opinion if an ordinary reader would constitute it as an opinion on a matter of public concern.  *See, e.g.*, *Mr. Chow of New York v. STE Jour Azur S.A.*, 759 F.2d 219, 224 (2d Cir. 1985) ("The inquiry into whether a statement should be viewed as one of fact or one of opinion must be made

from the perspective of an 'ordinary reader' of the statement."); *Ratajack v. Brewster Fire Dep't, Inc. of the Brewster-Se. Joint Fire Dist.*, 178 F. Supp. 3d 118, 165 (S.D.N.Y. 2016) (holding that "articulated concerns that Plaintiff was a racist or a future threat to others—is nonactionable opinion").  Here, Baldwin's post simply states the basic facts of his interactions with the Plaintiffs on Instagram, Doc. 13 at 18–22, conveys his opinion that "[t]ruth is stranger than fiction," and reposted what Roice herself had posted publicly.  Thus, Baldwin's post does not expose Roice to hatred, shame, ostracism, or disgrace.  Accordingly, the Court concludes that the post is not defamatory.

However, Plaintiffs argue that even if the post is not literally defamatory, the defamatory meaning is implied because the responses of Baldwin's followers to his post suggest that the implication is that Plaintiffs are rioters, traitors, Nazis, or white supremacists.  Doc. 16 at 10.  Baldwin counterclaims that while "statements themselves may be literally true yet still actionable as defamatory by implication," in order "to sustain either one of these [defamation] claims, the implication or innuendo from those statements must be false in order to be defamatory."  Doc. 15 at 26; *Henry v. Fox News Network LLC*, 629 F.Supp.3d 136, 146 (S.D.N.Y. 2022) (holding that statements claiming that plaintiff engaged in willful sexual misconduct were not defamatory because plaintiff failed to allege that they are false).

Here, the Court concludes that Roice fails to allege that the post contains any false information:  she admits that she was present at the demonstration in Washington, D.C. on January 6, 2021, when and where she took the photo that she later publicly posted, and that Baldwin reposted.  Doc. 13 ¶¶ 18, 20.  In fact, the complaint makes clear that the substance of Baldwin's post was true:  Roice is Rylee's sister, her sister-in-law did

receive a $5,000 donation from Baldwin, and Roice did participate in the demonstration in Washington, D.C., on January 6, 2021, where she took the photo of herself that was reposted by Baldwin.  *Id.* ¶¶ 9, 18–19.  Thus, Baldwin's post is not defamatory.

In summary, Baldwin's private messages, comments, and posts cannot support Plaintiffs' claims of defamation, defamation *per se*, and defamation by implication. Accordingly, these claims are dismissed.

### B.  Negligence, Gross Negligence, and Negligent Infliction of Emotional Distress

Under New York law, negligence requires "a breach of a duty owed to the plaintiff," proximate cause between the conduct and the injury, damages, and, in the case of negligent infliction of emotional distress, severe emotional distress.  *Brodie v. Green Spot Foods, LLC*, 503 F. Supp. 3d 1, 6 (S.D.N.Y. 2020); *Francis v. Kings Park Manor, Inc.*, 992 F.3d 67, 81 (2d Cir. 2021) (additional citations omitted).

The question of the existence and scope of a defendant's duty is a legal issue for the court to resolve.  *Alfaro v. Wal–Mart Stores, Inc.*, 210 F.3d 111, 114 (2d Cir. 2000). Plaintiffs urge the Court to rule that that Baldwin assumed a duty of care under New York law because he knowingly advanced his own opinion on Instagram which resulted in attacks and threats towards Plaintiffs from his Instagram followers.  Doc. 16 at 18–19. They further contend that Baldwin had a duty to refrain from conduct that would cause injury to Plaintiffs and further assumed a duty of care because the ensuing hateful onslaught against Plaintiffs was reasonably foreseeable.  *Id.* at 19–20.  In response, Baldwin argues that all negligence claims should be dismissed because he did not owe Plaintiffs, parties with whom he had no privity, a duty of ordinary care.  Doc. 15 at 27– 28.

As a general rule, New York law does not impose upon persons the duty to protect others from injuries caused by third parties.  *See Purdy v. Pub. Adm'r of Westchester Cnty.*, 526 N.E.2d 4, 6–8 (N.Y. 1988).  However, such a duty may be imposed where "a special relationship exists between the defendant and the plaintiff, creating an obligation on the part of the defendant to protect the plaintiff from harm inflicted by the third party." *In re Sept. 11 Prop. Damage & Bus. Loss Litig.*, 468 F.Supp.2d 508, 525 (S.D.N.Y. 2006), *aff'd sub nom. Aegis Ins. Servs., Inc. v. 7 World Trade Co., L.P.*, 737 F.3d 166 (2d Cir. 2013).

The Court concludes that Plaintiffs failed to plead a relationship with Baldwin that could give rise to a duty of care on his part to prevent injuries to Plaintiffs caused by third parties.  While Plaintiffs allege that the ensuing onslaught of hateful messages against them was reasonably foreseeable, foreseeability of harm alone does not create a duty.  *See Pulka v. Edelman*, 358 N.E.2d 1019, 1022 (N.Y. 1976) (concluding that there is no duty to prevent the negligence of tortfeasors that are not controlled by the defendant).[11]  Even though Baldwin's followers, as third parties, may have reacted to Baldwin's opinion in an

---

[11] In *Pulka v. Edelman*, the New York Court of Appeals considered the duty of a hypothetical "garage to pedestrians who use the sidewalk across which cars leave the garage," and specifically, whether the relationship between the garage and such pedestrians "imposes a duty on the garage to take some precautions to protect pedestrians from its patrons."  *Pulka*, 358 N.E.2d at 1021–22.  The court determined that while the garage would owe a duty to "protect pedestrians from the acts of its own employees when driving a patron's vehicle across the path of pedestrians," it would be "most unfair to impose that duty on the garage with respect to acts of its patrons."  *Id.* at 1022.  That is because "[a] duty to prevent such negligence would not be imposed on one who does not control the tortfeasor."  *Id.*  Here too, the foreseeability of hateful messages from Baldwin's Instagram followers does not create a duty where the relationship between Baldwin and those followers is "at best somewhat tenuous."  *Id.*; *see also On v. BKO Exp. LLC*, 148 A.D.3d 50, 55 (1st Dep't 2017) (noting that in *Pulka*, the New York Court of Appeals "clarified the error [in the] reasoning" that the foreseeability of harm can "spawn" a duty to prevent that harm) (citation omitted) (alteration in original)); *Miglino v. Bally Total Fitness of Greater New York, Inc.*, 92 A.D.3d 148, 159 (2d Dep't 2011) (citing *Pulka* for the proposition that "foreseeability of an injury does not determine the existence of duty"), *aff'd but criticized on other grounds*, 20 N.Y.3d 342, 985 N.E.2d 128 (2013); *Abdulaziz v. McKinsey & Co., Inc.*, No. 21-2921, 2022 WL 2444925, at *3 (2d Cir. July 5, 2022) (citing *Pulka* for the proposition that foreseeability does not evince the existence of a duty, but rather, determines the scope of such duty once "it is determined to exist").

offensive manner, there is no obligation to protect a bystander to whom no duty is owed

from an emotional injury.  *Kennedy v. McKesson Co.*, 448 N.E.2d 1332, 1335 (N.Y.

1983).  Thus, because no special relationship exists between Baldwin and Plaintiffs, the

law does not impose a duty of care on Baldwin.

Because Baldwin owed no duty to Plaintiffs, the Court does not need to assess the

other *prima facie* elements of Plaintiffs' negligence claims.  Accordingly, Plaintiffs'

claims of negligence, gross negligence, and negligent infliction of emotional distress are

dismissed.

### C.  Intentional Infliction of Emotional Distress

"To state a claim for intentional infliction of emotional distress a party must

allege '(1) extreme and outrageous conduct, (2) intent to cause severe emotional distress,

(3) a causal connection between the conduct and the injury, and (4) severe emotional

distress.'"  *Sesto v. Slaine*, 171 F. Supp. 3d 194, 201 (S.D.N.Y. 2016) (quoting *Bender v.

City of New York*, 78 F.3d 787, 790 (2d Cir. 1996)).  The bar for pleading this claim is

"extremely high" and the conduct alleged must be "so outrageous in character, and so

extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as

atrocious, and utterly intolerable in a civilized society."  *Id.* at 201– 02 (internal quotation

marks omitted).

#### 1.  *Roice's Claim of Intentional Infliction of Emotional Distress Is Duplicative*

New York cases have held that "a separate cause of action for what are essentially

defamation claims should not be entertained."  *Anyanwu v. Columbia Broad. Sys., Inc.*,

887 F. Supp. 690, 693 (S.D.N.Y. 1995); *see also Manno v. Hembrooke*, 501 N.Y.S.2d 933,

936 (N.Y. App. Div. 1986) (dismissing plaintiff's claims for emotional distress because

the conduct of which plaintiff complains falls totally within the scope of the action of defamation).  Thus, "[w]hen additional tort claims are aimed at controlling the same speech that is the basis of a libel claim, courts should not entertain the additional claims under less stringent standards."  *See Anyanwu*, 887 F. Supp. 690 at 693 (quoting *Hustler Magazine v. Falwell*, 485 U.S. 46, 57 (1988)).

Because Roice's defamation claims and intentional infliction of emotional distress claim rely on the same underlying facts, and she did not plead any facts beyond those necessary to sustain her claims for defamation, Roice's claim of intentional infliction of emotional distress is dismissed.  *Jacob v. Lorenz*, No. 21 Civ. 6807 (ER), 2023 WL 4106298, at *14 (S.D.N.Y. June 21, 2023) (Ramos, J.) (dismissing plaintiffs' tort claim because it is "duplicative of their defamation allegations, and [] otherwise insufficiently pleaded).

### 2.  *Jiennah and Cheyenne's Claims of Intentional Infliction of Emotional Distress Are Insufficiently Pleaded*

Under New York law, conduct may be "extreme and outrageous" where "there is a deliberate and malicious campaign of harassment or intimidation."  *Rich v. Fox News Network, LLC*, 939 F.3d 112, 122–23 (2d Cir. 2019) (quoting *Scollar v. City of New York*, 74 N.Y.S.3d 173, 178 (2018)).  Thus, the proper inquiry is not merely whether an individual act might be outrageous, but whether the action in totality amounted to a deliberate and malicious campaign.  *Id.* at 123.

Under the above standard, Jiennah and Cheyenne fail to plead that Baldwin's conduct was "extreme and outrageous" or that he acted with an intent to cause severe emotional distress.  Jiennah and Cheyenne stated in the complaint that "[Baldwin's post] invited 2.4 million people to attack, threaten, and shame the McCollum family."  Doc. 13

¶¶ 60, 77.  Even taken as true, this single allegation does not meet the "extremely high bar" of intentional infliction of emotional distress.  *Cf. Moraes v. White*, 571 F. Supp. 3d 77, 104 (S.D.N.Y. 2021) (finding that it is "extreme and outrageous" that defendant made multi-pronged campaign to harass plaintiff, including sending agents to her apartment to threaten her, delivering cease-and-desist letters, and post defamatory statements on social media).  While Jiennah and Cheyenne also allege that they received death threats and hateful comments referring to them as Nazis and racists, Doc. 16 at 21, these statements were made by third parties.  *See, e.g.*, Doc. 13-1 at 9, 12–19.  Thus, they cannot be used as evidence of plaintiffs' claims of intentional infliction of emotional distress against Baldwin.  In addition, Jiennah and Cheyenne do not plead that Baldwin acted with an intent to "cause severe emotional distress."  Accordingly, Jiennah and Cheyenne's claims for intentional infliction of emotional distress are dismissed due to insufficient pleading.

## IV.   LEAVE TO AMEND

The Court will, however, grant Plaintiffs leave to amend their complaint as to the claims of defamation and intentional infliction of emotional distress.  Courts are instructed to "freely give leave [to amend a pleading] when justice so requires."  Fed. R. Civ. P. 15(a)(2).  The Second Circuit has instructed courts not to dismiss a complaint "without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated."  *Shabazz v. Bezio*, 511 F. App'x 28, 31 (2d Cir. 2013) (quoting *Shomo v. City of New York*, 579 F.3d 176, 183 (2d Cir. 2009)) (internal quotation marks omitted).

Here, because this is the Court's first opportunity to highlight the precise defects of Plaintiffs' pleading and it is not yet apparent that another opportunity to amend would

be futile, the Court will permit them to replead defamation and intentional infliction of emotional distress.  However, the negligence claims and negligent infliction of emotional distress are dismissed because Baldwin owed no duty of care to Plaintiffs.

## V.    CONLCUSION

For the foregoing reasons, Baldwin's motion to dismiss the FAC is GRANTED. Plaintiffs are granted leave to file an amended complaint, if at all, by September 12, 2023. If Plaintiffs do not file an amended complaint by that date, the case will be closed.  If Plaintiffs do file an amended complaint, Baldwin is directed to answer the complaint by October 3, 2023.

The Clerk of Court is respectfully directed to terminate the motion, Doc. 14.

It is SO ORDERED.

Dated:    August 22, 2023
          New York, New York

_____

EDGARDO RAMOS, U.S.D.J.